689 So.2d 322 (1997)
NERBONNE, N.V., etc., Appellant,
v.
LAKE BRYAN INTERNATIONAL PROPERTIES, etc., et al., Appellees.
No. 95-41.
District Court of Appeal of Florida, Fifth District.
January 31, 1997.
Rehearing Denied March 13, 1997.
*323 Arnaldo Velez of Taylor, Brion, Buker & Greene, Miami, for Appellant.
Terry L. McCollough, P.A., Orlando, for Appellees.
*324 PETERSON, Chief Judge.
Nerbonne, N.V., appeals the dismissal of its counterclaim, the striking of its affirmative defenses and the entry of a final judgment of foreclosure in a mortgage foreclosure brought by Lake Bryan International Properties, Inc. ("Lake Bryan") and R. James Hickman. The gravaman of Nerbonne's counterclaim and affirmative defenses centers on the alleged fraud of Robert Figueredo, K. Dwight Waters and corporations controlled by them, including Lake Bryan.[1]
Nerbonne alleges in its counterclaim that Figueredo formed Nerbonne to purchase a large tract of land as an investment and induced individuals to purchase capital stock of the corporation for a minimum purchase of $100,000. The stock offering memorandum represented that the purchase price of the land would be $5.1 million. The offering memorandum did not disclose that shortly before Nerbonne purchased the land for $5.1 million, the following took place: Figueredo, Waters, and the corporations controlled by them, Euro American Investment Corporation (EAIC), Euro American Properties, S.A. (EAP), Waterford Group, and Lake Bryan had conspired to purchase the land for only $2.4 million and had an agreement to share any undisclosed profits upon resale of the land. In sum, Figueredo and Waters allegedly conspired to share the undisclosed difference between $2.4 million and $5.1 million.
The portion of the purchase price not paid in cash by Nerbonne was in the form of a $2,550,000 mortgage to Lake Bryan, which, as noted, is allegedly another Waters entity incorporated to complete Figueredo's and Waters' conspiracy. Lake Bryan was to assist in the resale of the land by obtaining the purchase money mortgage, collecting payments, and assigning individual interests in the mortgage to third parties, including appellee Hickman.[2] The instant action was stimulated on February 10, 1989, by Lake Bryan's complaint for foreclosure in which Lake Bryan alleged the mortgage was in default in the amount of $574,890.
In 1986, Lake Bryan and Nerbonne were involved in a foreclosure of the same mortgage. A judgment was entered in that foreclosure but later was judicially vacated. That action was followed by a stipulated judgment that reinstated and modified the mortgage. At the time of the modification, Figueredo and his corporation were in control of Nerbonne, and Waters was in control of Lake Bryan. In the instant action, the trial court entered a summary judgment against Nerbonne (no longer controlled by Figueredo) that dismisses its counterclaim and strikes its affirmative defenses which resulted in a final judgment of foreclosure for Lake Bryan and Hickman. In granting summary judgment the trial court relied upon the grounds that Nerbonne's action was barred by the statute of limitations and by res judicata because of the stipulated final judgment in the 1986 foreclosure. Nerbonne challenges the summary judgment entered by the trial court while the appellees provide several arguments in its favor.[3]

I. LAW OF THE CASE
Appellees argue that this court's previous decision in Nerbonne N.V. v. Lake Bryan Int'l Prop., Inc., 593 So.2d 1206 (Fla. 5th DCA 1992) precludes Nerbonne from appealing the trial court's order of summary judgment because the court considered the issues in this appeal in that earlier appeal. We disagree. The only issue addressed by this court in the earlier appeal was to determine the ownership of the note secured by the mortgage in foreclosure.
Appellees further contend that Nerbonne was precluded from filing, on remand, an amended complaint. Airvac, Inc. v. Ranger Ins. Co., 330 So.2d 467 (Fla.1976), cited by appellees in support of their position, is distinguishable from the instant facts.
*325 In Airvac, the defendant's motion to amend its pleading was denied and an adverse judgment entered. The defendant successfully appealed but did not raise as an issue on appeal the propriety of the order denying leave to amend. On remand, the defendant again moved for leave to amend, but the motion was denied. The Florida Supreme Court held that the trial court correctly denied the motion because the defendant had not appealed the initial denial. The supreme court stated that on retrial the trial court was bound by the appellate court's decision, and since the issue was neither a matter of record upon which the appeal was decided, nor a matter to be determined on remand, the trial court had no authority on remand to permit the defendant to amend its answer to interject a new issue into the case. In contrast, Nerbonne had a right to raise issues which had not been previously considered by this court in response to the trial court's allowance on remand of appellees' amended complaint.

II. DUTY TO DISCLOSE FRAUD
Lake Bryan contends that it had no duty to Nerbonne to make any disclosures relative to profits realized upon the purchase of real estate by Nerbonne. They acknowledge that Figueredo may have had fiduciary duties to Nerbonne, but assert that they did not.
We agree initially with Lake Bryan that if it made a substantial profit upon the resale of the real estate to Nerbonne as a result of an advantageous purchase, they should not have to answer to Nerbonne for that profit. Buying at a low price and selling at a higher price is the way in which the market place is driven. But here, Nerbonne has alleged that Lake Bryan and Waters were not independent of the scheme devised by Figueredo to defraud Nerbonne in violation of Figueredo's fiduciary duty owed to Nerbonne. In review, Nerbonne alleges that Figueredo conspired with Waters against Nerbonne, that Figueredo furnished funds to Waters for the purchase of real estate at a low price, and then immediately thereafter the land was sold to Nerbonne at a higher price, and that the two of them then determined the manner in which the fraudulent profit would be divided. Figueredo had a fiduciary duty to purchase the lands for Nerbonne's benefit at a price that would not result in a secret profit and it would be a breach of that duty to conspire with a fully informed Waters, to artificially inflate the price of the real estate. Figueredo needed others to carry out the plan and those who knowingly participate as an aider and abettor are liable to Figueredo's principal, i.e., Nerbonne. The allegation that Waters and Lake Bryan participated in the plan is sufficiently supported by the record to preclude summary judgment. Parties concurring with promoters in defrauding a corporation are liable for the resulting loss. Ft. Myers Development Corp. v. J.W. McWilliams Co., 97 Fla. 788, 122 So. 264 (1929); Phillips Chemical Co. v. Morgan, 440 So.2d 1292 (Fla. 3d DCA 1983), rev. denied, 450 So.2d 486 (Fla. 1984).
Nerbonne has stated a cause of action against Waters and his controlled corporation, Lake Bryan, and is entitled to present proof of its allegations. The fraud has also been asserted as an affirmative defense against the mortgage foreclosure.

III. NERBONNE'S RETENTION OF REAL ESTATE
Lake Bryan and Hickman allege that Nerbonne is estopped from disavowing the acts of Figueredo and the indebtedness of the mortgage because Nerbonne wishes to retain the remainder of the land (part of it was sold at a profit) and also recover the difference between the price paid by Waters and the price paid by Nerbonne. We disagree. If Lake Bryan participated in Figueredo's breach of his fiduciary obligations, the purchase price that should have been paid by Nerbonne was $2.4 million, the purchase price available to Figueredo for the benefit of Nerbonne. If the fraud and conspiracy is proved, upon remand Nerbonne should have the benefit of the lower purchase price and any profits upon resale.

IV. CIVIL THEFT
Nerbonne alleged a claim for civil theft pursuant to section 812.014(1), the criminal theft statute. All parties agree that *326 Nerbonne should have cited to the treble damages for civil theft statute, section 772.11. Nerbonne argues that the trial court should have allowed it to amend its complaint rather than having dismissed it with prejudice because the facts alleged show that Nerbonne had a viable claim. Lake Bryan counters that Nerbonne failed to allege that it provided the pre-suit notice required by the statute and that the statute of limitations has expired.
Although Nerbonne did not allege that it specifically complied with the statute, it did allege that all conditions precedent to filing the suit had been met. Even if this allegation is insufficient to show compliance with the statute, the insufficiency cannot sustain the summary judgment. The record does not reflect that Nerbonne neglected to make the demand nor does it show that the limitations period for the claim has expired. Unless the record reflects non-compliance and expiration of the statute of limitations so that Nerbonne would be unable to timely comply with the pre-notice requirements of the statute, summary judgment is inappropriate on this basis. Seymour v. Adams, 638 So.2d 1044 (Fla. 5th DCA 1994).

V. RES JUDICATA
Nerbonne's affirmative defense to the mortgage foreclosure and counterclaim against Lake Bryan based upon fraud was partially countered by Lake Bryan's defense of res judicata. The factual basis for the defense is grounded upon the 1987 mortgage foreclosure initiated by Lake Bryan. Although the foreclosure proceeded to final judgment, the parties to the litigation stipulated that it should be vacated and the action dismissed with prejudice. Additionally, some of the provisions of the mortgage were modified. Acting upon the parties' joint motion and stipulation, the trial judge entered an order dated March 4, 1987 that: (1) set aside the previously entered final judgment and declared it "null and void and of no force and effect"; (2) modified some of the terms of the manner of repayment and (3) provided that other than as set forth in the order, the mortgage would remain unchanged and would be fully enforceable in the event of default.
We see nothing in the language of the order nor the proceeding stipulation that would waive any defenses that may have been available to Nerbonne as the mortgagor and that may have arisen before or after the order. In fact, there is nothing in the stipulation or order that would distinguish them from an ordinary mortgage modification agreement other than the reference to the final judgment. The mortgage foreclosure proceeding leading to the final judgment has no effect on available defenses because the subsequent order nullified the final judgment.
We do note the statement in Lake Bryan's brief that Nerbonne executed a general release in favor of Lake Bryan. Nerbonne denies such a release exists and Lake Bryan's statement is not supported with a citation to the record. We must conclude that the release does not exist and that the statement was improperly included in the brief.

VI. ECONOMIC LOSS RULE
The appellees also argue in support of the summary judgment granted that the economic loss rule bars Nerbonne's claims. We disagree. Waters and Lake Bryan had an extra contractual, preexisting duty not to collude with Figueredo in a scheme to defraud Nerbonne. Nerbonne's allegations of fraud assert matters that predate the purchase of the real property at the inflated price. Nerbonne's claim is not for inadequate value for the benefit of a bargain, or for disappointed economic expectations. It is a claim sounding in tort alleging that its interests should not be negatively affected by fraudulent conduct by its fiduciary conspiring with third parties.
In Tinwood, N.V. v. Sun Banks, Inc., 570 So.2d 955 (Fla. 5th DCA 1990), disapproved on other grounds, 600 So.2d 1093 (Fla.1992), which involved claims for fraud and civil theft, this court reversed a directed verdict in favor of the defendants. This court held that an embezzlement whereby the defendant obtains possession of the plaintiff's funds and *327 thereafter converts the funds to his own use will justify an action for civil theft. Id. at 961. This court held that the mere existence of a contractual relationship between the parties does not preclude actions for civil theft and conversion. Id., citing Nova Flight Center, Inc. v. Viega, 554 So.2d 626 (Fla. 5th DCA 1989) (existence of lease contract does not bar civil theft claim that lessee's principals stole electricity and personalty from lessor). Other recent cases have interpreted the economic loss rule as not barring actions for fraud in the inducement, conversion and theft. Woodson v. Martin, 685 So.2d 1240 (Fla.1996), Burke v. Napieracz, 674 So.2d 756 (Fla. 1st DCA 1996). Monco Enterprises, Inc. v. Ziebart Corp., 673 So.2d 491 (Fla. 1st DCA 1996); TGI Development, Inc. v. CV Reit, Inc., 665 So.2d 366 (Fla. 4th DCA 1996), rev. granted, 684 So.2d 1350 (Fla.1996).

VII. CLAIMS AGAINST HICKMAN
The briefs and counterclaim do not make it clear as to the manner in which Hickman became a party plaintiff to this action. We have not found allegations specifically directed towards Hickman and therefore affirm the dismissal of the counterclaim as to him. However, the affirmative defenses are directed toward the enforceability of the promissory note and must be resolved by trial.

VIII. JURY TRIAL
Nerbonne asserts that the trial court erred by denying it a jury trial. A mortgage foreclosure proceeding is equitable in nature and does not afford the parties a right to a jury trial. Norris v. Paps, 615 So.2d 735 (Fla. 2d DCA 1993).

IX. SUMMARY
We vacate the final judgment of foreclosure, the summary judgment on Nerbonne's counterclaim as to Lake Bryan, and the order striking Nerbonne's affirmative defenses. The order dismissing the counterclaim against Hickman is affirmed, as is the trial court's denial of a jury trial. We remand to the trial court for further proceedings.
JUDGMENT VACATED; ORDER AFFIRMED; REMANDED.
W. SHARP and GRIFFIN, JJ., concur.
NOTES
[1] This action was the subject of an earlier appeal. Nerbonne, N.V. v. Lake Bryan Int'l. Properties, Inc., 593 So.2d 1206 (Fla. 5th DCA 1992).
[2] Hickman was not a party/plaintiff at the inception of the mortgage foreclosure.
[3] Nerbonne also filed a separate appeal, No. 94-2916, in which it alleged that summary judgment was erroneously entered on Nerbonne's third party claim against Figueredo and those corporations controlled by him.