764 So.2d 878 (2000)
TransPETROL, LTD., Appellant,
v.
Rodoljub RADULOVIC, Ramoil Holding Co., Ltd., Ramoil Management Co., Thomas O. Katz, Ruden, McClosky, Smith, Schuster & Russell, P.A., and J.D. Gilbert & Company, Appellees.
No. 4D99-2807.
District Court of Appeal of Florida, Fourth District.
August 9, 2000.
Richard H. Levenstein of Kramer, Sewell, Sopko & Levenstein, P.A., Stuart, and Timothy J. Carey and Brigitte T. Nuss of Chapman and Cutler, Chicago, Illinois, for appellant.
Sidney A. Stubbs of Jones Foster Johnston & Stubbs, P.A., West Palm Beach, and John H. Pelzer of Ruden, McClosky, Smith, Schuster & Russell, P.A., Fort Lauderdale, for appellees.
WARNER, C.J.
In this case of international financial intrigue, the trial court dismissed the complaint against the tax lawyers and accountants who were sued for fraud and RICO violations. We affirm the dismissal of the complaint, holding that, as to the fraud count, appellant failed to allege any reliance on the misrepresentations in which the lawyers and accountants participated. As to the RICO count, we hold that there *879 were no allegations that the lawyers and accountants participated in the operation and management of the "enterprise."
Appellant, TransPetrol, a Bermudian corporation, was engaged in the business of buying, selling, and shipping commodities in international commerce. It entered into a series of agreements to sell various commodities with Ramoil Holding, the sole owner of which was Rodoljub Radulovic, who also owned Ramoil Management Co., another defendant. As part of the sale of commodities, TransPetrol would also assist Ramoil Holdings with financing the transactions with third parties when Ramoil was unable to provide letters of credit or bank guarantees.
The multiple transactions recited in TransPetrol's complaint against Ramoil and Radulovic commenced in 1992. Two sales of oil and sugar occurred that year. TransPetrol then loaned Ramoil substantial sums of money between January and July of 1993, but was only partially repaid by Ramoil's delivery of small cargoes of oil. In November of 1993, TransPetrol agreed to provide financial assistance to Ramoil in connection with the acquisition and sale of medical equipment and supplies and later that month agreed to finance Ramoil in connection with a contract of sale of sugar. Finally, in December of 1993 TransPetrol sold oil to Ramoil Holding. Payment was to be made in January 1994.
All of these transactions resulted in a substantial debt owed by Ramoil to TransPetrol. In order to collect it, TransPetrol attached accounts of Ramoil and others in 1995. Radulovic induced TransPetrol to lift the attachment by offering a $220,000 payment and promises to make payments by November 1, 1995. While the $220,000 payment was made, the November payment was not. Significant monies still remained due.
TransPetrol alleged in its complaint that commencing in November 1993 through 1996 Radulovic and Ramoil made a series of fraudulent transfers of property to hide their assets from creditors. The complaint alleges that appellee, Thomas Katz, and his law firm Ruden, McClosky, Smith, Schuster & Russell, P.A., as well as appellee J.D. Gilbert & Company, an accounting firm, participated in or aided the fraudulent conveyances or "recharacterizations" of millions of dollars of Ramoil Holding payments. Specifically, the complaint alleges that fraudulent tax returns were created in 1994 through 1996. In 1996, the lawyers and accountants allegedly characterized as a corporate investment a multimillion dollar payment from Ramoil's accounts for Radulovic's personal house. Later, the complaint alleges that when Ramoil's other assets were sold and the proceeds pocketed by Radulovic individually, the lawyers and accountants "caused these disbursements to be recast and mischaracterized" with the intent to defraud the creditors of Ramoil and Radulovic, including TransPetrol. However, nowhere in the complaint is it alleged that any of the claimed fraudulent financial documents were ever delivered to TransPetrol, or that they were created prior to any of the transactions from which the debt to TransPetrol arose. Nevertheless, TransPetrol alleges that had it been aware of the multiple "illegal acts" by Ramoil and Radulovic, it would have discontinued business with Ramoil holding and would not have agreed to lift the attachment it had secured in 1995.
The complaint names the lawyers and the accountants in two counts: one for common law fraud and one for RICO violations. The trial court dismissed the fraud count because it failed to show reliance on the part of TransPetrol on the various documents prepared by the lawyers and accountants on which the claim of fraud was based. While TransPetrol alleges that the defendants fraudulently omitted to advise TransPetrol of their unlawful conduct, no duty is alleged. A defendant's knowing concealment or non-disclosure of a material fact may only support an action for fraud where there is a duty to disclose. *880 See Don Slack Ins., Inc. v. Fidelity & Cas. Co. of N.Y., 385 So.2d 1061 (Fla. 5th DCA 1980). "[S]uch duty arises when one party has information that the other party has a right to know because of a fiduciary or other relation of trust or confidence between them." State v. Mark Marks, P.A., 654 So.2d 1184, 1189 (Fla. 4th DCA 1995), approved by, 698 So.2d 533 (Fla.1997) (citation omitted). In the instant case, there is no confidential, contractual, or fiduciary relationship between TransPetrol and the lawyers and accountants. They represented Ramoil and Raduolvic, not TransPetrol. There are no allegations to support a relationship which would give rise to a duty to disclose.
TransPetrol claims that the lawyers' and accountants' liability for fraud is predicated upon their knowing participation in the scheme of Ramoil and Radulovic, not their independent duty owed toward TransPetrol. The cases upon which it relies, however, are distinguishable. In Nessim v. DeLoache, 384 So.2d 1341 (Fla. 3d DCA 1980), a seller represented that the yacht it was selling was in good condition, despite knowing that it had latent defects. The buyer relied on the representation, purchased the yacht, and then sued for fraud when he discovered the defects. The court held that an action for fraud exists where one party has superior knowledge and intentionally fails to disclose a material fact. See id. at 1344. Unlike the present case, the parties in Nessim were in the relationship of buyer and seller, and the seller knew and intended the buyer to rely on his representation. Similarly, in Nicholson v. Kellin, 481 So.2d 931 (Fla. 5th DCA 1985), a buyer/seller relationship existed, and the claim was based upon a material misrepresentation of fact, not a duty to disclose.
Finally, TransPetrol relies on Nerbonne, N.V. v. Lake Bryan International Properties, 689 So.2d 322 (Fla. 5th DCA 1997), in which a party was held liable for participating in a fraudulent land sale scheme, noting that "[p]arties concurring with promoters in defrauding a corporation are liable for the resulting loss." 689 So.2d at 325 (citations omitted). However, in Nerbonne, the injured plaintiff alleged that he had relied upon a stock offering memo, the falsity of which was known by the defendants, both of which participated in the fraud. In the present case, TransPetrol did not allege that it relied on anything drafted or prepared by the lawyers and accountants. Nerbonne is thus distinguishable.
TransPetrol failed to allege any duty to it on the part of the lawyers and accountants to disclose the alleged falsity of the financial documents, nor did it show any reliance by TransPetrol on the alleged scheme of fraudulent transfers and the documents created by it. Furthermore, the alleged false financial documents were created after TransPetrol had incurred the losses to Ramoil through the commodities transactions. Thus, the complaint failed to state a cause of action for fraud.
The trial court also dismissed the count alleging RICO violations based upon the economic loss rule. As the appellees concede, the rule does not apply where there is no contract between the parties in litigation. See Southland Constr., Inc. v. Richeson Corp., 642 So.2d 5, 8 (Fla. 5th DCA 1994). In the instant case, there was no contractual relationship between TransPetrol and the lawyers or accountants.
However, we affirm the trial court on a "right for the wrong reason" analysis, because the complaint fails to properly plead a cause of action against the lawyers and accountants. The elements of a RICO civil action are: 1) violation of 18 U.S.C. § 1962; 2) injury to business or property; and 3) that the violation caused the alleged injury. See Bill Buck Chevrolet, Inc. v. GTE Florida, Inc., 54 F.Supp.2d 1127, 1132 (M.D.Fla.1999), aff'd by, 216 F.3d 1092 (11th Cir.2000). While the complaint is sufficient as to the first two elements, we conclude that it has not alleged that the racketeering activity was the proximate cause of the injury suffered by TransPetrol. See Beck v. Prupis, *881 162 F.3d 1090, 1095 (11th Cir.1998), aff'd by, 529 U.S. 494, 120 S.Ct. 1608, 146 L.Ed.2d 561 (2000).
In Beck, the president of the company filed a RICO action against directors of the company claiming that he was caused to make several unwise financial decisions resulting in injury because, in part, the defendants failed to inform him of their illegal activities within the corporation and their creation of false financial statements for the corporation. In affirming summary judgment for the directors, the Eleventh Circuit noted that failure to inform the president of illegal activities was not sufficient to show an intent to defraud Beck. More particularly, in addressing proximate cause the court stated:
[a]lso, Beck has presented no evidence that this omission proximately caused his losses. He has repeatedly stated that had he known about the illegal activities, he would not have made the same financial decisions. As noted above, however, this type of "but for" causation is insufficient to sustain a claim of fraud. Instead, proximate cause is required, meaning that this omission must have been a "substantial factor" in his decisionmaking. See Cox v. Administrator United States Steel & Carnegie, 17 F.3d 1386, 1399 (11th Cir. 1994); see also Brandenburg v. Seidel, 859 F.2d 1179, 1189 (4th Cir.1988) (stating that the inquiry in determining the existence of proximate cause is "whether the conduct has been so significant and important a cause that the defendant should be held responsible" (quoting W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 42 (5th ed.1984))).
Id. at 1097. In addition, the court held that creation of false financial documents could not serve as the basis of a claim for fraudulent inducement that would support the RICO proximate cause requirement because there was no showing that these documents were intended to induce Beck in his financial dealings. Specifically, the court noted that Beck had failed to show that he "actually saw, let alone relied upon, any false financial statements prior to making his financial decisions." Id. (footnote omitted).
Likewise, in this case TransPetrol never alleged that it relied upon any of the false statements created by the parties in making its financial decisions. The allegations of the complaint show that the financial decisions to engage in business with Ramoil were made prior to the involvement of the lawyers and accountants. There is no allegation that TransPetrol saw any of the documents it contends are false and fraudulent, or that those documents were created to induce TransPetrol to take any action. Therefore, we conclude in line with Beck that the complaint fails to state a cause of action for RICO violations.
Affirmed.
GUNTHER and STEVENSON, JJ., concur.