DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**BASHAR M. YATAK** and **52 SW 5TH CT., WHSE, LLC,**
a Florida limited liability company,
Appellants,

v.

**LA PLACITA GROCERY OF FORT PIERCE CORP.,**
a Florida corporation, and **DILSON S. URRIBARRI,**
Appellees.

No. 4D2023-1102

[February 14, 2024]

Appeal of a nonfinal order from the Circuit Court for the Nineteenth Judicial Circuit, St. Lucie County; Brett M. Waronicki, Judge; L.T. Case Nos. 562017CA001209 and 2017CC002110.

Gerald Barnette Cope, Jr., and Lorayne Perez of Akerman, LLP, Miami, Elaine Johnson James of Elaine Johnson James, P.A., Palm Beach Gardens, and Francisco J. Garcia of Garcia Law, PL, Port St. Lucie, for appellants.

Agustin R. Benitez of Benitez Law Group, P.L., Orlando, for appellees.

WARNER, J.

Appellants, Bashar M. Yatak and his business 52 SW 5th Ct., WHSE, LLC, appeal a nonfinal order granting the plaintiff, La Placita of Fort Pierce Corp., leave to amend to plead a claim for punitive damages. Yatak contends that, in an arm's-length transaction in negotiations over the purchase of La Placita, his conduct does not reasonably support a claim for punitive damages. Further, he contends that procedurally the court erred in granting the motion when La Placita did not attach the proposed amended complaint to the motion to amend. We agree that the court erred procedurally, and on the merits we conclude that La Placita's allegations were insufficient under the circumstances to warrant punitive damages. We therefore reverse.

## Background

The thrust of La Placita's punitive damage claim is that Yatak breached an oral promise to also purchase La Placita's grocery business if he purchased the property on which La Placita leased the premises for its grocery store. La Placita claims that Yatak lied to induce La Placita to waive the right of first refusal to buy the property included in La Placita's lease.

La Placita is a grocery store business owned by Dilson Urribarri. Urribarri purchased the business from Jose Garcia in 2013 and La Placita rented the store's business site from Garcia. The lease between Garcia, the landlord, and La Placita provided:

> TERMINATION UPON SALE OF THE PREMISES. Notwithstanding any other provision of this Lease, Landlord may terminate this lease upon 60 days written notice to Tenant that the premises have been sold. **Tenant will have preemptive rights to offer to buy the property if property is offered for sale.**

(Emphasis supplied). The plaintiff refers to this as its "right of first refusal."

At the end of December 2016, Urribarri approached Yatak, who owned several convenience stores in the area, about purchasing La Placita. The two began negotiating terms. As part of the negotiations, Urribarri provided Yatak with the lease that La Placita had with the landlord. Urribarri admitted that he had prepared it himself.

In May 2017, Yatak told Urribarri he was interested in purchasing the property from La Placita's landlord and asked Urribarri to waive his right of first refusal. The negotiations to purchase the store were ongoing, but Urribarri testified that Yatak agreed not to purchase the property unless he also purchased La Placita's grocery store business.

Urribarri testified that he did not trust Yatak and called his attorney to discuss the proposed waiver. Urribarri read the waiver to his attorney. The waiver included an integration clause providing that the parties had no other agreements, and that the waiver constituted the entire written agreement. After speaking with his attorney, Urribarri signed the waiver. The written waiver did not include the condition that Yatak purchase La Placita's business.

2

Urribarri testified that on the day he signed the waiver, he and Yatak agreed to a $550,000 purchase price for the grocery business, for which Yatak would pay $400,000 cash at closing and execute a $150,000 promissory note. However, Urribarri also testified that the agreement was not complete. Indeed, an email from Yatak's attorney, after the execution of the waiver, introduced himself to Urribarri's attorney and set forth the money terms as he understood them. No other terms were discussed.

In his deposition, Urribarri testified that the parties had not come to a "concrete" agreement. Because the attorneys were taking a long time, Urribarri testified that he spoke to Yatak again to resolve some issues, "and [they] came to a different agreement." Urribarri threatened to withdraw the waiver of his right of first refusal because the agreement for the sale of the grocery business had not been completed. Urribarri then changed the terms of the asset purchase, and his attorney wrote to Yatak's attorney that $500,000 cash would be required at closing and only $50,000 could be paid by promissory note. Other issues were identified about which assets were included.

Unbeknownst to Urribarri, Yatak had already agreed to purchase the property from the landlord. One contract dated May 8, 2017, and another one dated May 15, 2017, called for a September 2017 closing.

When Urribarri threatened to withdraw his waiver, Yatak accelerated and completed his purchase of the property on June 9, 2017. After the sale closed, the landlord officially transferred title to Yatak's business, 52 SW.

52 SW initially advised Urribarri that it would continue to lease the property to La Placita, but 52 SW later learned that La Placita was using two suites in 52 SW's buildings that it had not leased. Also, La Placita was operating several unauthorized businesses on the property. 52 SW instructed La Placita to desist and exercised its right to terminate the lease with sixty days' notice.

In July 2017, La Placita filed this action in circuit court, alleging that Yatak had orally agreed to purchase La Placita for $550,000 and that La Placita would not have waived its right of first refusal but for this promise.

La Placita refused to surrender the property, and 52 SW filed an eviction action in county court. La Placita filed a counterclaim against Yatak and 52 SW in the eviction case raising the same allegations as the circuit court action. The counterclaim exceeded the county court's jurisdiction, and the case was transferred to circuit court.

In April 2018, the court entered a final eviction judgment and a final judgment on the pleadings denying La Placita's counterclaim. La Placita refused to vacate the premises, and the court issued writs of possession that were executed in May 2018. La Placita appealed the judgment on its counterclaim, and this Court reversed and remanded for further proceedings. *Urribari v. 52 SW 5th Ct., WHSE, LLC*, 266 So. 3d 1257 (Fla. 4th DCA 2019).

The December 2017 Second Amended Complaint filed by La Placita was the operative complaint when the motion to plead punitive damages was filed. In that pleading, La Placita alleged seven counts: (1) promissory estoppel; (2) unjust enrichment; (3) specific performance; (4) fraud in the inducement; (5) intentional misrepresentation; (6) negligent misrepresentation; and (7) breach of contract. All of these claims were premised, at least in part, on Yatak breaching his alleged promise not to buy the landlord's property without also buying La Placita's business.

In January 2023, La Placita moved to amend its complaint "by interlineation" to seek punitive damages against Yatak and 52 SW. The motion alleged that Yatak and 52 SW fraudulently misrepresented that, if La Placita waived its right of first refusal, Yatak would not buy the property without also buying La Placita's grocery business for $550,000. At the time of this alleged misrepresentation, Yatak and 52 SW had already entered into a contract to purchase the property from the landlord. Yatak admitted in deposition that no reason existed to purchase La Placita once the land was purchased because 52 SW could terminate the lease and remove La Placita without completing the purchase.

La Placita did not attach any summary of proofs with its motion, nor did it attach the proposed amended complaint for punitive damages. Yatak filed a written opposition to the motion.

La Placita set its motion for a hearing on March 23, 2023. On March 21, 2023, La Placita served a three-page proffer of evidence and a Dropbox link with over one thousand pages of documents. At the hearing, La Placita proffered twenty-four exhibits from the Dropbox documents, and Yatak objected to the short notice.

Yatak pointed to the undisputed evidence that, when the waiver was signed, Urribarri knew that the landlord had offered the property for sale and that Yatak was interested in buying. Urribarri admitted that he did not trust Yatak and that Urribarri and his counsel could have inserted Yatak's alleged promise to Urribarri in the waiver, but did not.

4

Yatak argued that punitive damages are not allowed for this "arm's-length" business transaction between two experienced businessmen who were represented by counsel, who owed no fiduciary duties to each other, and who admittedly did not trust each other. The trial court took the matter under advisement and asked for proposed orders from the parties.

On March 28, 2023, several days after the hearing, La Placita filed a "Summary of the Proffer/Evidence to Support Request to Amend to Add Request for Punitive Damages," with sixty-four enumerated factual paragraphs supporting a finding that Yatak knew the wrongfulness of his conduct. La Placita's counsel included this entire proffer in the proposed order that the judge ultimately entered.

Yatak filed an objection and moved to strike the post-hearing summary. Pursuant to Florida Rule of Civil Procedure 1.190(f), the proffer of evidence was due twenty days before the hearing. The initial proffer was made just two days before the hearing and a copy of the proposed complaint amended "by interlineation" was not filed before the hearing. The summary was filed five days after the hearing.

Nevertheless, the trial court entered the order on appeal granting La Placita leave to plead punitive damages. The order recited all the facts that La Placita proffered in its post-hearing summary, including new allegations that were made for the first time.

Yatak filed a motion for reconsideration of the order granting leave to amend to add punitive damages, arguing that: (1) punitive damages are not available for breach of contract; (2) the alleged fraud was negated by the waiver; (3) the court erred by including the post-hearing summary of the proffer in the order; (4) the court failed to consider Yatak's proffer; and (5) the court erred by allowing La Placita to merge the two cases. A week later, La Placita filed a Third Amended Complaint. Yatak also argued that La Placita violated the court's order by filing an unauthorized and greatly expanded Third Amended Complaint, instead of amending "by interlineation."

La Placita filed a notice that it was withdrawing its request for punitive damages as to negligent misrepresentation, breach of contract, specific performance, and injunctive relief. La Placita still sought punitive damages for fraud in the inducement, intentional misrepresentation, promissory estoppel, and unjust enrichment.

The trial court denied the motion for reconsideration without explanation, and this appeal was timely filed from the order granting the motion to amend.

## Analysis

We review de novo an order on a motion to amend to assert a claim for punitive damages. *Cleveland Clinic Fla. Health Sys. Nonprofit Corp. v. Oriolo,* 357 So. 3d 703, 705 (Fla. 4th DCA 2023).

We first address the procedural missteps in this case. Rule 1.190(f) governs motions to amend to add claims for punitive damages. In addition to incorporating the statutory prerequisites for punitive damages under section 768.72, Florida Statutes (2023), the rule requires the movant to attach the proposed amended pleading to the motion. Fla. R. Civ. P. 1.190(a); *Fed. Ins. Co. v. Perlmutter,* 48 Fla. L. Weekly D2320, --- So. 3d ---, 2023 WL 8609988, at *3 (Fla. 4th DCA Dec. 13, 2023) (en banc). The motion to amend and supporting evidence or proffer must be served on all parties "at least 20 days before the hearing." Fla. R. Civ. P. 1.190(f). The record shows that La Placita violated these rules by not attaching the proposed amended pleading to the motion to amend and by filing the initial proffer only two days before the hearing. La Placita submitted its summary of the proffer—which included new allegations—after the hearing.

While La Placita argues that these procedural issues were not preserved, we think Yatak's and 52 SW's objections were sufficient to preserve these grounds for appeal. We would reverse on these grounds alone. However, on de novo review and with all the evidence before the court, we can also determine on the merits that a reasonable showing was not made to allow a punitive damages claim.

As we recently stated in *Perlmutter,* "the trial courts have a 'gatekeeping' role to preclude a punitive damages claim where no reasonable evidentiary basis for recovery exists." 2023 WL 8609988 at *4. Further, to permit a punitive damages claim, there must be "a reasonable showing by evidence in the record or proffered by the claimant which would provide a reasonable basis for recovery of such damages." § 768.72(1), Fla. Stat. (2023).

Punitive damages are not recoverable in breach of contract actions. *Ferguson Transp., Inc. v. N. Am. Van Lines, Inc.,* 687 So. 2d 821, 822 (Fla. 1996). The counts for promissory estoppel and unjust enrichment are contract or "quasi-contract" claims. *Della Ratta v. Della Ratta,* 927 So. 2d 1055, 1059 (Fla. 4th DCA 2006) (recognizing that a claim for a "contract

implied in law" is also known as "unjust enrichment"); *DK Arena, Inc. v. EB Acquisitions I, LLC,* 112 So. 3d 85, 93 (Fla. 2013) (citing Restatement (Second) of Contracts § 90, cmt. d) ("A promise binding under [promissory estoppel] is a contract.") As a matter of law, therefore, the court erred in allowing the motion to amend as to these contract counts.

This leaves the counts for fraud in the inducement and intentional misrepresentation to support the punitive damage claim. These are tort claims, and "[o]nly if a party to a contract proves a tort independent from the acts that breach the contract is the party entitled to recover punitive damages." *Ferguson,* 687 So. 2d at 822. As our supreme court has set forth:

> The general rule is that punitive damages are not recoverable for breach of contract, irrespective of the motive of defendant. But where the acts constituting a breach of contract also amount to a cause of action in tort there may be a recovery of exemplary damages upon proper allegations and proof. In order to permit a recovery, however, the breach must be attended by some intentional wrong, insult, abuse or gross negligence which amounts to an independent tort.

*Id.* at 822–23 (quoting *Griffith v. Shamrock Vill., Inc.,* 94 So. 2d 854, 858 (Fla. 1957)); *see also Grossman Holdings Ltd. v. Hourihan,* 414 So. 2d 1037, 1040 (Fla. 1982). Without proof of the independent tort, no basis for punitive damages exists. *Ferguson,* 687 So. 2d at 822.

A claim of fraud in the inducement may support punitive damages. *See Connecticut Gen. Life Ins. Co. v. Jones,* 764 So. 2d 677, 682 (Fla. 1st DCA 2000). But, as in *Jones,* not every claim is sufficiently compelling to support an award. The elements of fraudulent inducement are: "'(1) a false statement of material fact; (2) the maker of the false statement knew or should have known of the falsity of the statement; (3) the maker intended that the false statement induce another's reliance; and (4) the other party justifiably relied on the false statement to its detriment.'" *Rose v. ADT Sec. Servs., Inc.,* 989 So. 2d 1244, 1247 (Fla. 1st DCA 2008); *Prieto v. Smook, Inc.,* 97 So. 3d 916, 917 (Fla. 4th DCA 2012). The elements of intentional misrepresentation are the same. *See Ashland Oil, Inc. v. Pickard,* 269 So. 2d 714, 721 (Fla. 3d DCA 1972).

The operative complaint alleged that: Yatak misrepresented he would not purchase the landlord's property without purchasing La Placita; Yatak allegedly knew or should have known that this was false; Yatak intended La Placita to rely on his promise; and La Placita "justifiably" relied on

Yatak's misrepresentations. However, even if we were to agree that undisputed evidence shows Yatak made a false statement of material fact in promising to purchase the business if he purchased the property, the record fails to show that La Placita was justified in relying on Yatak's false statement.

First, the parties had not reached a definite agreement on the purchase of La Placita, which Urribarri himself admitted in his deposition when he stated that the agreement was not "concrete" and the terms of the agreement changed after the waiver was given.

Second, the waiver of La Placita's right to purchase the property contained an integration clause providing:

> Each of the undersigned hereby acknowledges and agrees that this Waiver constitutes the entire agreement and understanding between the parties to this Waiver, and supersedes any and all prior agreements (either oral or written) between the parties hereto relating to the subject matter thereof.

Urribarri signed that agreement, thus acknowledging in writing that the parties had no other agreements. He could not justifiably rely on an oral promise which he specifically agreed in writing was superseded by the subsequent waiver. "A party cannot recover in fraud for alleged oral misrepresentations that are adequately covered or expressly contradicted in a later written contract." *Mac-Gray Servs., Inc. v. DeGeorge*, 913 So. 2d 630, 634 (Fla. 4th DCA 2005).

Finally, this was an arm's-length commercial transaction. Yatak and Urribarri were both seasoned businessmen. "[E]ven intentional nondisclosure of known material facts in a commercial real estate transaction is not actionable." *Green Acres, Inc. v. First Union Nat'l Bank of Fla.*, 637 So. 2d 363, 364 (Fla. 4th DCA 1994). "A defendant's knowing concealment or non-disclosure of a material fact may only support an action for fraud where there is a duty to disclose." *TransPetrol, Ltd. v. Radulovic*, 764 So. 2d 878, 879 (Fla. 4th DCA 2000). "[S]uch duty arises when one party has information that the other party has a right to know because of a fiduciary or other relation of trust or confidence between them." *Id.* at 880 (alteration in original) (quoting *State v. Mark Marks, P.A.*, 654 So. 2d 1184, 1189 (Fla. 4th DCA 1995)).

Yatak owed no fiduciary duty to Urribarri. *Maxwell v. First United Bank*, 782 So. 2d 931, 934 (Fla. 4th DCA 2001) ("In an arms length [sic]

transaction . . . there is no duty imposed on either party to act for the benefit or protection of the other party, or to disclose facts that the other party could, by its own diligence have discovered.") (quoting *Watkins v. NCNB Nat'l Bank of Fla.*, 622 So. 2d 1063, 1065 (Fla. 3d DCA 1993)).

The lease provision that would allow a purchaser to terminate the lease was known to Urribarri because he originally negotiated the lease. Although he did not know that Yatak had come to an agreement with the landlord on the purchase, Yatak had no duty to disclose that agreement. While Urribarri makes much of the fact that a contract between Yatak and the landlord may have predated the signing of the waiver, any contract would always be contingent on La Placita waiving its right of first refusal; thus, any contract between Yatak and the landlord was not operative until Urribarri executed his waiver. Moreover, Urribarri consulted an attorney prior to signing the waiver and relied on his advice in signing the waiver. Urribarri did not "justifiably" rely on Yatak's statements.

For all these reasons, there is no reasonable showing from the evidence in the record that the independent tort can be established to support a punitive damages claim. Therefore, the court erred in granting the motion to amend. We reverse and direct that the punitive damages claim be stricken.

*Reversed and remanded.*

GROSS and MAY, JJ., concur.

* * *

**Not final until disposition of timely filed motion for rehearing.**

9