638 So.2d 1044 (1994)
Michael J. SEYMOUR d/b/a Seymour Construction, Appellant,
v.
John P. ADAMS and Ann D. Adams, Appellees.
No. 93-1961.
District Court of Appeal of Florida, Fifth District.
June 24, 1994.
*1045 William N. Asma, of Asma & Wright, P.A., Winter Garden, for appellant.
J. Davis Connor, of Peterson, Myers, Craig, Crews, Brandon & Puterbaugh, P.A., Winter Haven, for appellees.
GRIFFIN, Judge.
Michael J. Seymour ("Seymour") and Seymour Construction Corp. ("Seymour Construction") appeal the summary final judgment entered in favor of John P. Adams and Ann D. Adams, defendants below (collectively the "Adamses"), on claims arising out of an eviction of Seymour by the Adamses.
Seymour was the lessee of a home located in Clermont, Florida which he used as offices for Seymour Construction.[1] The property was owned by the Adamses, who were Seymour's landlords under a "Land Lease" executed June 7, 1991.[2] Seymour defaulted on the rents due under the lease, and the Adamses filed an action for eviction against him on February 15, 1991. A summary final judgment of eviction was entered against Seymour on March 22, 1991. The final judgment also found Seymour liable for unpaid rents in the amount of $8,600, and provided that "the lease which is the subject of the above-entitled legal action is terminated... ." This judgment was apparently not appealed.
The Adamses obtained a writ of possession from the clerk on March 22, 1991, which was executed by the Lake County Sheriff's Department on March 26, 1991. Utilizing the writ, the Adamses changed the locks and retook possession of the building. The Sheriff did not remove Seymour's personalty at the time of the eviction, but instead obtained a release from the Adamses which provided as follows:

*1046 That the Landlord elects to take possession of said personal property pursuant to F.S. 715.10 through F.S. 715.11 DISPOSITION OF PERSONAL PROPERTY LANDLORD AND TENANT ACT, Florida Statutes, and hereby releases and holds harmless the Sheriff of Lake County, from any liability from anyone whomsoever when acting pursuant to this said "Request" and agrees to pay any damages, costs and reasonable attorney's fees if the Sheriff of Lake County, Florida is sued when acting pursuant to this "Request."
Upon learning of his eviction, Seymour asked the Adamses to give him access to the building so that he could retrieve his personal property, which was still located on the premises. However, the Adamses refused, claiming they were entitled to retain the personalty as security for Seymour's unpaid rent. Seymour then made a written demand for possession of his personalty by letter dated June 11, 1991, in which he noted that "[t]here was never a distress writ issued by the Court assuring the landlord's lien." However, the Adamses again refused to turn over the personalty and, instead, obtained a writ of execution commanding the Sheriff of Lake County to levy on Seymour's property. The writ was docketed in Lake County on June 21, 1991 but was evidently not executed. Sometime thereafter, the Adamses moved most of Seymour's personalty into a storage shed owned by them.
The Adamses' judgment for unpaid rent was satisfied in full in February 1992.[3] Following payment, Seymour again asked the Adamses to return his property. They again refused, but this time justified their retention of the property on the ground that Seymour owed them money for storage fees. They also asserted that the property had, in any event, been "abandoned" by Seymour.
Seymour and Seymour Construction, which allegedly owned some of the property which had been left on the premises, then filed the instant action against the Adamses for (1) conversion; (2) damages for destruction of the property; (3) civil theft; and (4) replevin. Seymour's amended complaint added a fifth count for fraud and misrepresentation in the inducement of the original lease. Affirmative defenses raised by the Adamses were: (1) that they were entitled to retain the property by virtue of the final judgment and the writ of execution dated June 21, 1991; (2) that they were entitled to retain the property as security for storage charges which were owed on the property; (3) that Seymour had abandoned the property; (4) that the final judgment evicting Seymour was res judicata; and (5) that Seymour had waived and/or was estopped to assert any claims concerning the property.
The Adamses eventually moved for summary judgment on all counts of the complaint, and Seymour filed a cross-motion on his claims for civil theft and conversion. In his motion, Seymour maintained that the Adamses had wrongfully retained his property, given their failure to obtain a distress writ under Chapter 83 of the Florida Statutes. Seymour also raised the fact that the writ of execution had not been obtained until almost three months after entry of the final judgment and that the final judgment had been satisfied in full in February 1992.
Both parties filed a number of depositions and affidavits in support of their respective motions, and the court held a hearing.[4] In a written order dated July 19, 1993, the lower tribunal denied Seymour's motion for summary judgment and then, by written order dated July 23, 1993, the court entered summary final judgment in favor of the Adamses on all counts of the complaint. We reverse the final summary judgment against Seymour on his claims for civil theft, conversion and replevin, but otherwise affirm the trial court's ruling.
Seymour correctly contends that the Adamses were not entitled to final summary judgment on the claim for conversion since they retained his property without a valid right of possession. The essence of the tort of conversion is the exercise of wrongful dominion or control over property to the *1047 detriment of the rights of the actual owner. United American Bank of Central Florida, Inc. v. Seligman, 599 So.2d 1014, 1017 (Fla. 5th DCA), review denied, Pierce v. United American Bank of Central Florida, Inc., 613 So.2d 7 (Fla. 1992). Thus, conversion may occur where a person wrongfully refuses to relinquish property to which another has the right of possession. Senfeld v. Bank of Nova Scotia Trust Co. (Cayman), Ltd., 450 So.2d 1157 (Fla. 3d DCA 1984). The tort may be established despite evidence that the defendant took or retained property based upon the mistaken belief that he had a right to possession, since malice is not an essential element of the action. City of Cars, Inc. v. Simms, 526 So.2d 119 (Fla. 5th DCA), review denied, 534 So.2d 401 (Fla. 1988); Ciamar Marcy, Inc. v. Monteiro Da Costa, 508 So.2d 1282 (Fla. 3d DCA 1987).
The Adamses' retention of Seymour's personalty following the eviction cannot be justified on the basis of the landlord's lien for unpaid rent established by section 83.08, Florida Statutes (1991),[5] since the establishment of such a lien against property does not confer a right to possess the property against the owner. Van Hoose v. Robbins, 165 So.2d 209, 210 (Fla. 2d DCA 1964) ("a lien or claim of lien, without more, does not necessarily denote right to possession"). In Van Hoose, the court pointed out that:
Distress for rent is a common law remedy and one of the rare cases in which the law allowed `a man to be his own avenger, or to minister redress to himself.' 3 Cooley's Blackstone 3d Ed. 5. This common law remedy of distress for rent, existing without statute and creating a lien upon seizure of the tenant's property, has been superseded in most jurisdictions, as in Florida, by a statutory remedy.
Id. at 212 (quoting City Building Corp. v. Farish, 292 F.2d 620 (5th Cir.1961)). The Van Hoose court concluded that:
Fla. Stat. § 83.08, F.S.A. does not provide or confirm in the landlord a self-executing possessory lien; and that the promulgation of statutory distress under said Chapter 83, viewed in the light of Fla. Stat. § 2.01, F.S.A., effectively superseded common law distress  at least in cases where abandonment by the tenant is not clearly evident.
Id. at 212 (citation omitted) (emphasis in original).
We agree with the Van Hoose court that the statutory lien alone does not confer a right of possession. The statutory distress procedure has supplanted the common law distress procedure, which gave the landlord the right to seize the personalty and hold it until it was redeemed by payment of the rent claim.[6] Compliance with the distress statute is the means by which a statutory landlord's lien is enforced. The statute sets forth a clear and straightforward remedy for a landlord who is owed rent to obtain the value of chattel subject to the landlord's lien in satisfaction of the rent claim. §§ 83.08-.18, Fla. Stat. (1993).
For a similar reason the Adamses had no right to retain the property based on the docketing of the writ of execution in Lake County on June 21, 1991. At most, the docketing of the writ of execution caused the Adamses' judgment lien to attach to the personalty and establish its priority. See, e.g., Jacksonville Bulls Football, Ltd. v. Blatt, 535 So.2d 626, 630 (Fla. 3d DCA 1988). This act may be significant in terms of priority over other lienholders, but it did not create any property rights in the personalty beyond the right to have the property of the judgment debtor levied on by the sheriff and sold at an execution sale. Love v. Williams, 4 Fla. 126 (1851). Seymour was entitled to possession of the property until the sheriff levied on it.
Nor did the lease confer any right of possession of the personalty upon the *1048 Adamses. Paragraph 22(b)[7] of the lease, which is principally relied upon by the Adamses, creates no rights in the Adamses beyond the right to remove Seymour's personalty from the real property and to recoup storage fees incurred in caring for the personal property for the tenant's account. No reasonable reading of that lease provision would support the Adamses' contention that it creates a right to retain Seymour's personalty as security for unpaid rent much less for payment of the selfsame storage fees.
The "Disposition of Personal Property Landlord and Tenant Act," Section 715.10, et seq., Florida Statutes (1991), would have entitled the Adamses to retain possession of Seymour's personalty as security for storage fees incurred after his eviction from the property, had Seymour voluntarily left his personalty on the premises following termination of his leasehold and had the Adamses complied with the statute. The Act provides:
(1) When personal property remains on the premises after a tenancy has terminated or expired and the premises have been vacated by the tenant, through eviction or otherwise, the landlord shall give written notice to such tenant and to any other person the landlord reasonably believes to be the owner of the property.
(2) The notice shall describe the property in a manner reasonably adequate to permit the owner of property to identify it. The notice may describe all or a portion of the property, but the limitation of liability provided by s. 715.11 does not protect the landlord from any liability arising from the disposition of property not described in the notice, except that a trunk, valise, box, or other container which is locked, fastened or tied in a manner which deters immediate access to its contents may be described as such without describing its contents. The notice shall advise the person to be notified that reasonable costs of storage may be charged before the property is returned, and the notice shall state where the property may be claimed and the date before which the claim must be made. The date specified in the notice shall be a date not fewer than 10 days after the notice is personally delivered or, if mailed, not fewer than 15 days after the notice is deposited in the mail.
§ 715.104, Fla. Stat. (1991) (emphasis added). See also § 715.107, Fla. Stat. (1991) (landlord may leave property on premises or move to place of safekeeping). Here, however, it is undisputed that the Adamses made no attempt to comply with the provisions of Chapter 715, and made no demand for storage fees until after the judgment lien had been satisfied. Moreover, the record reflects that the landlord refused to honor Seymour's requests to return his personalty. Under these circumstances, the landlord is not entitled to storage fees. Based on the foregoing, the trial court improperly entered judgment in favor of the Adamses on Seymour's claim for conversion.[8] Seymour is not, however, entitled to summary judgment on the cross-motion. At best, there is a surviving issue of fact concerning whether he had abandoned the property he now claims was wrongfully retained.
We also agree with Seymour that the lower court erred in granting the Adamses summary judgment on the count for civil theft. The complaint alleged that:
37. Pursuant to Florida Chapter 772, Plaintiffs are entitled to bring an action for Civil Theft against the Defendants.
38. The Defendants wrongfully dispossessed the Plaintiffs of Plaintiffs personal *1049 property, which is more particularly described in attached Exhibit "B".
39. The Defendants intended to deprive the Plaintiffs of possession of their personal property permanently.
40. Plaintiffs are entitled to recover from the Defendants three times the value of the personal property taken by the Defendants herein.
The trial court granted summary judgment to the Adamses on this count because the complaint failed to allege that Seymour had made a written demand for $200 or treble damages, as required by section 772.11, Florida Statutes (1989) and the complaint failed to sufficiently allege the state of mind required to establish civil theft. The trial court also found that the claim for civil theft was barred because the Adamses had a legal right of possession of Seymour's personalty.
The mere existence of a contractual relationship between the parties does not preclude an action for civil theft. Tinwood N.V. v. Sun Banks, Inc., 570 So.2d 955 (Fla. 5th DCA 1990), disapproved of on other grounds, State v. Lucas, 600 So.2d 1093 (Fla. 1992). The allegations contained in Seymour's complaint appear sufficient to state a claim for civil theft under section 772.11 based on a violation of section 812.014, Florida Statutes (1989). The Adamses claim that, at most, the evidence shows a mistaken belief in their right to retain the property; however, there is some evidence in the record from which it can be inferred that the Adamses either intended to deprive Seymour of his rights in the personalty or to appropriate the property to their own use. The current state of this record will not support a summary judgment in favor of the Adamses on this issue.
The lower court was correct that Seymour failed to allege that he had complied with the demand requirements of section 772.11, Florida Statutes (1989); however, this failure did not support entry of summary final judgment. Seymour's failure to comply with the demand requirements of the statute were not raised by the Adamses as a ground for summary judgment. The Adamses failed to conclusively establish for the record, by affidavit or otherwise, that no such demand was ever made. Cheshire v. Magnacard, Inc., 510 So.2d 1231 (Fla. 2d DCA 1987); Epperson v. Dixie Ins. Co., 461 So.2d 172 (Fla. 1st DCA 1984), review denied, 471 So.2d 43 (Fla. 1985). Unless it appears on the record that the statute was not complied with and that the five year statute of limitations established by section 772.17, Florida Statutes (1989) had expired so that Seymour would be unable to comply with the requirements of the statute, summary judgment is inappropriate on this basis. See Korman v. Iglesias, 736 F. Supp. 261 (S.D.Fla. 1990).[9]
In count IV of his complaint, Seymour sought to replevy whatever items of his personal property still remain in the Adamses' possession. The trial court granted summary judgment on this count, apparently theorizing that Seymour was not entitled to replevy the property until payment of storage fees allegedly owed by Seymour under paragraph 22(b) of the lease. Because we have held that the Adamses had no right to collect storage fees or to retain the property against payment of these fees, summary judgment was error on this count  replevin is the recognized remedy in such circumstances.
Finally, we conclude that the lower court correctly entered summary judgment on the fraud claim, which was plainly barred because not raised as a counterclaim in the first action. See City of Mascotte v. Florida Municipal Liability Self-Insurers Program, 444 So.2d 965 (Fla. 5th DCA 1983), review denied, 451 So.2d 847 (Fla. 1984).
AFFIRMED in part; REVERSED in part and REMANDED.
HARRIS, C.J., and DAUKSCH, J., concur.
NOTES
[1] Seymour Construction was not a party to the lease.
[2] The lease of the house was part of a land lease encompassing 150 acres which contemplated that Seymour would develop the property.
[3] It appears to have been satisfied through an independent foreclosure proceeding filed against Seymour by a third party.
[4] The hearing was apparently not reported.
[5] Chapter 83 of the Florida Statutes establishes a lien for rent due a landlord upon all property of the lessee which is "usually kept on the premises." § 83.08, Fla. Stat. (1991). Such a lien is "superior to any lien acquired subsequent to the bringing of the property on the premises leased." § 83.08(2), Fla. Stat. (1991). Under section 83.09, "[n]o property of any tenant or lessee shall be exempt from distress and sale for rent, except beds, bedclothes and wearing apparel."
[6] 2 G. Thompson, Commentaries on the Modern Law of Real Property, § 1305 at 493 (Grimes, rev. ed. 1981).
[7] If any such event of default occurs and exists, Owner may (without further notice) immediately do one or more of the following:
(i) Re-enter and re-possess the property, and remove any personal property therein and store the same elsewhere at Tenant's expense, without relieving Tenant from any liability or obligation.
(ii) Re-let the Property or any part thereof for Tenant's account, but without obligation to do so and without relieving Tenant from any liability or obligation. Any amount received by Owner from reletting will apply first to all reasonable costs and expenses incurred by Owner in reletting (including without limitation broker's commissions, advertising expense, and cleaning and remodeling expense).
(iii) Bring an action then or thereafter against Tenant to recover the amount of any payment owing by Tenant to Owner as the same is due, becomes due, or accumulates.
[8] Count II appears to be a defective duplicate of Count I, and we see no error in the lower court's disposition of it.
[9] Although there appear to be no Florida cases on the failure to comply with the demand requirements of section 772.11, the supreme court has indicated in an analogous context that the failure to comply with pre-suit notice requirements should not result in dismissal of a complaint unless notice cannot be given within the limitation period. See Hospital Corp. of America v. Lindberg, 571 So.2d 446 (Fla. 1990).