In re NATURALLY BEAUTIFUL NAILS, INC. and Nail Masters, Inc., Debtor.

Naturally Beautiful Nails, Inc., Plaintiff,

Bay Area Capital, Inc., Intervener–Plaintiff,

v.

Wal–Mart Stores, Inc., d/b/a Sam's Club, Defendant.

Bankruptcy Nos. 95–321–8P1, 95–802–8P1.

Adversary Nos. 98–727, 99–160.

United States Bankruptcy Court, M.D. Florida, Tampa Division.

April 17, 2001.

Buddy Ford, Tampa, Florida, for debtor/plaintiff.

Bernard H. Gentry, Lakeland, Florida, for intervenor/plaintiff.

Richard C. Prosser, Tampa, Florida, for defendant.

## ORDER ON WAL–MART STORES, INC., d/b/a SAM'S CLUB'S MOTION FOR SUMMARY JUDGMENT AGAINST BAY AREA CAPITAL, INC., ON COUNT II OF ITS COMPLAINT (Doc. No. 150)

ALEXANDER L. PASKAY,
Bankruptcy Judge.

On December 31, 1998, Naturally Beautiful Nails, Inc. and Nail Masters, Inc. (Naturally Beautiful) filed a three-count Complaint against Wal–Mart Stores, Inc., d/b/a Sam's Club (Wal–Mart). In their Complaint Naturally Beautiful sought money damages based on an alleged fraudulent conveyance, preferential transfer and breach of contract. On January 8, 1999, Bay Area Capital, Inc. (Bay Area) filed a Motion to Intervene and an Amended Motion to Intervene. On February 25, 1999, this Court entered an Order and granted the Motion. In due course, Bay Area filed its Complaint and its Amended Complaint.

The immediate matter under consideration is a Motion for Summary Judgment filed by Wal–Mart. The Motion is addressed to Count II of the Amended Complaint in which Bay Area alleged a cause of action based on Fla.Stat. § 772.11 (civil theft statute of Florida) and sought monetary damages plus treble damages under the statute. Wal–Mart in its Motion for Summary Judgment contends there are no material issues of disputed fact and Wal–Mart is entitled to summary judgment in its favor as a matter of law on Count II of the Amended Complaint filed by Bay Area.

The Motion is based on the proposition urged by Wal–Mart first that Bay Area did not comply with the demand requirements of the statute relied on by Bay Area in that it failed to allow 30 days to expire after making a written demand before commencing an action for civil theft; second, that the claim in Count II asserts a tort claim for civil theft which under Flori-

da law is precluded based on the "economic loss rule."

The basic facts as appear from the record are indeed without dispute and can be summarized as follows:

In 1993, Wal–Mart and Naturally Beautiful entered into a Vendor Agreement (Vendor Agreement) whereby Naturally Beautiful would provide nail care kits for Sam's Club stores. Naturally Beautiful, in order to obtain financing, entered into a Master Accounts Receivable Purchase Agreement with Bay Area. (MARPA Agreement). Under the MARPA Agreement, Bay Area agreed to advance funds on certain accounts receivables of Naturally Beautiful, including some accounts receivable due to Naturally Beautiful from Wal–Mart under the Vendor Agreement. Shortly after the commencement of the Chapter 11 cases of Naturally Beautiful and its affiliate, Nail Masters, Inc., Naturally Beautiful commenced Adversary Proceeding No. 95–384, by filing a Complaint against Bay Area. Bay Area filed a counterclaim against Naturally Beautiful in which it alleged, inter alia, a breach of contract and civil theft arising out of the MARPA Agreement. On July 17, 1996, Naturally Beautiful filed a Motion to Dismiss the counterclaim attacking the claim on civil theft asserted by Bay Area based on Florida's economic loss rule. On April 7, 1997, the Honorable Paul M. Glenn of this Court granted Naturally Beautiful's Motion and dismissed the claim based on civil theft asserted by Bay Area. The Court in its ruling held that the claim asserted by Bay Area for civil theft was barred by Florida's economic loss rule, the claim being nothing more than a breach of contract claim.

On December 31, 1998, Naturally Beautiful commenced Adversary Proceeding No. 98–727 suing Wal–Mart alleging in its Complaint that Wal–Mart breached the Vendor Agreement. On January 7, 1999, Bay Area filed a Complaint in the Circuit Court of the 10th Judicial Circuit in and for Polk County, Florida against Wal–Mart alleging a breach of contract by Wal–Mart based on the Vendor Agreement. On January 8, 1999, Bay Area amended its state court Complaint and included a count for civil theft. On March 5, 1999, Wal–Mart removed the state court action to this Court which became Adversary Proceeding No. 99–160. On May 6, 1999, this Court consolidated the adversary proceeding commenced by Bay Area in the state court and now removed with the already pending adversary proceeding commenced by Naturally Beautiful.

The claim under challenge, as noted earlier, is set forth in Count II of the Amended Complaint in which Bay Area alleged that Wal–Mart was indebted in a significant amount of money to Naturally Beautiful and that Wal–Mart refused and continued to refuse to pay the monies due on the invoices submitted by Naturally Beautiful. In addition, in the Amended Complaint it is alleged that Wal–Mart, by unilaterally taking improper deductions and credits acted with felonious intent and knowingly obtained and used, or attempted to obtain and use property of Bay Area. In addition, it is also alleged in Count II that in addition to the improper deductions and credits, Wal–Mart obtained Bay Area's property by fraud, willful misrepresentation of a future act or false promise.

As noted earlier, the attack on the claim in Count II of the Amended Complaint by Wal–Mart is two-fold. First, it is contended that Wal–Mart is entitled to summary judgment because of Bay Area's failure to comply with the requirements of Fla.Stat. § 772.11 which, in relevant part, provides as follows:

"Before filing an action for damages under this section, the person claiming

injury must make a written demand for $200 or the treble damage amount of the person liable for damages under this section. If the person to whom a written demand is made complies with such demand within 30 days after receipt of the demand, that person shall be given a written release from further civil liability for the specific act of theft by the person making the written demand."

■ Of course the initial inquiry must be addressed to the threshold issue which is the impact, if any, of the failure to comply with the notice requirements of Fla.Stat. § 772.11. As noted, Bay Area did not wait until the expiration of the 30 days to file its suit and while it made a demand on Wal–Mart to respond to its claim, it was made on the same date the suit was filed. In defense of this claim, Bay Area contends that so long as a written demand is made it is sufficient and there is no statutory prohibition against filing a suit within the contemplated 30-day period, citing *Seymour v. Adams*, 638 So.2d 1044 (5th DCA 1994). The language cited above leaves no doubt that the statute requires that before an action for civil theft is filed the potential plaintiff must make a written demand for payment upon the defendant and cannot commence a suit until the expiration of the 30 days in the event no payment is made. *Korman v. Iglesias*, 736 F.Supp. 261 (S.D.Fla.1990).

It is without dispute that in the instant case Bay Area sent its demand letter to Wal–Mart on the very same day it filed its amendment to the Complaint alleging for the first time a claim based on civil theft. Thus, it is evident that Bay Area did not comply with the requirements of this Statute. Based on this undisputed fact, Wal–Mart contends it is entitled to summary judgment as a matter of law, citing, *Nerbonne, N.V. v. Lake Bryan International Properties*, 689 So.2d 322 (5th DCA 1997);

*Seymour v. Adams, supra.* In *Seymour,* the Court of Appeals agreed with the trial Court that the failure to allege that the plaintiff failed to comply with the notice requirement of the Statute did not support the entry of the summary judgment. The Court emphasized that the failure to make the demand required by the Statute was not raised as a ground for summary judgment and the record failed to establish conclusively that no such demand was ever made, citing, *Cheshire v. Magnacard, Inc.,* 510 So.2d 1231 (Fla. 2d DCA 1987); *Epperson v. Dixie Ins. Co.,* 461 So.2d 172 (Fla. 1st DCA 1984), review denied 471 So.2d 43 (Fla.1985). The Court in *Seymour* held that unless it appears on the record that the Statute was not complied with and the five year Statute of Limitation established by § 772.17 had expired so the Plaintiff no longer complied with the requirement of the Statute the summary judgment by the defendant was inappropriate on this ground.

■ In *Nerbonne* the plaintiff argued that the trial court erred by dismissing the complaint with prejudice and the Court should have allowed the plaintiff to amend its complaint because it had a viable claim. The court in rejecting the defense of noncompliance with the demand requirement of the Statute that even an insufficient allegation of the requirement of the Statute would not warrant a dismissal. In this case, the record does not establish that no demand has been made and that the Statute of Limitations has expired. The court in *Nerbonne* concluded that unless it is established in the record first a noncompliance and second an expiration of the Statute of Limitations which would prevent to timely comply with the Statute, the summary judgment for the defendant was inappropriate, citing *Seymour v. Adams, supra.* Both *Seymour* and *Nerbonne* involved the failure to raise

the issue in the answer or in support of the motion for summary judgment. In the present instance, the issue was raised, albeit more than two years after the commencement of the suit and Bay Area continued to pursue its claim set forth in Count II in reliance of Wal–Mart's failure to promptly raise the issue of noncompliance. By its failure to timely seek a dismissal of the claim of Bay Area and the parties having proceeded with extensive discovery and preparation for trial, this Court is satisfied that Wal–Mart is estopped to raise the defense now. Assuming that this record does not warrant the finding of estoppel, this Court still must consider the alternative ground asserted in favor of the Motion for Summary Judgment, the applicability of the economic loss rule to the claim asserted in Count II.

▮ As an alternative, Wal–Mart contends that even assuming that this Court does not dismiss the claim in Count II based on non-compliance with the notice requirement of the Statute, Wal–Mart is still entitled to summary judgment under Florida law because an action for civil theft is barred by the economic loss rule because the claim in Count II is nothing more than an alleged breach of contract by Wal–Mart.

Considering first the applicability of the economic loss rule in the present instance, it should be noted that Florida courts are not in agreement as to the application of the economic loss rule. There is a line of state and federal courts in Florida holding that an action for civil theft under Florida law cannot be maintained as a matter of law by the plaintiff if alleged only that the defendant failed to comply with the terms of the contract. *Gambolati v. Sarkisian,* 622 So.2d 47 (4th DCA 1993); *Rosen v. Marlin,* 486 So.2d 623 (3rd DCA 1986); *Advanced Surgical Technologies, Inc. v. Automated Instruments, Inc.,* 777 F.2d 1504 (11th Cir.1985); *Leisure Founders, Inc. v. CUC International, Inc.,* 833 F.Supp. 1562 (S.D.Fla.1993).

In determining whether the claim for civil theft is nothing but a breach of contract case therefore not actionable, courts looked at whether the compensatory damages sought are identical in both counts, that is the count alleging breach of contract and the count based on civil theft. The Supreme Court of Florida in the case of *HTP, Ltd. v. Lineas Aereas Costarricenses, S.A.,* 685 So.2d 1238 (Fla.1996) held that the economic loss rule has not eliminated a cause of action based upon the independent tort of fraudulent inducement to the contract. The Court in this case concluded that the fraudulent inducement is a stand-alone, and an independent tort which requires proof of facts separate and independent for the proof required to establish a breach of contract.

Most of the cases which refuse to apply the economic loss rule involved tort claims based on fraudulent inducement. *Comptech International, Inc. v. Milam Commerce Park, Ltd.,* 753 So.2d 1219 (Fla. 1999); *Puff 'N Stuff of Winter Park, Inc. v. Bell,* 683 So.2d 1176 (Fla. 5th DCA 1996); *Hotels of Key Largo, Inc. v. RHI Hotels, Inc.,* 694 So.2d 74 (Fla. 3rd DCA 1997); *rev. denied,* 700 So.2d 685 (Fla. 1997). The logic of the cases which adopted the non-applicability of the economic loss rule were basically grounded on the conclusion that fraud in the inducement is a pre-contract fraudulent conduct which undermines one party's ability to meaningfully negotiate and make informed decisions. Clearly the factual inquiry supporting fraud are different and distinguishable from those supporting a subsequent breach of contract claim. *Bradley Factor, Inc. v. United States,* 86 F.Supp.2d 1140, 1145 (M.D.Fla.2000). While no specific rule can be discerned from this decision,

certain guidelines are relevant and must be considered whether the civil theft claim in this instance could be maintained.

It appears from the foregoing that this exception should not be applied to claims based on fraudulent inducement to enter into a contract but only to conduct after the parties have already entered into the contract. This still leaves for consideration, however, whether or not the proof approach which basically underlies most of these cases should be applied to a claim asserted under the civil theft statute in the present instance.

Bay Area alleges in its claim asserted in Count II that Wal–Mart acted with *felonious intent and knowingly obtained or used property of Bay Area* by taking improper deductions and credits against the invoices submitted by Naturally Beautiful. Bay Area also alleges in Count II, basically, the operating elements of a conversion. In addition, the difficulty in this particular instance should be obvious when one considers the relationship between the parties. There is nothing in this record to indicate that Bay Area ever had any contractual relationship with Wal–Mart, Inc. The fact, even assuming it is a fact, that the improper deductions and credits against the invoices submitted by Wal–Mart are true, it was certainly nothing more than a contract dispute between the contracting parties, Naturally Beautiful and Wal–Mart. The fact that the invoices were factored by Bay Area is of no consequence even if Bay Area was a third party beneficiary of the Agreement.

In opposition to the Motion, Bay Area filed an Affidavit of Robert Loftin who in relevant part alleged in his Affidavit that Wal–Mart was aware that Bay Area acquired an interest in the accounts receivable. Facts in the Affidavit are also alleged in Paragraph 13 that Wal–Mart engaged in tortious interference with business relationship which, of course, is a claim which has never been asserted in Count II. Therefore, any allegation in Paragraph 13 of the Affidavit is not relevant and should be disregarded.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that Wal–Mart's Motion for Summary Judgment on Count II be, and the same is hereby, denied. It is further

ORDERED, ADJUDGED AND DECREED that the trial scheduled for May 29, 2001 at 9:00 a.m. shall proceed as scheduled.