883 So.2d 867 (2004)
CHRISTOPHER ADVERTISING GROUP, INC., Appellant,
v.
R & B HOLDING COMPANY, INC., a Florida Corporation d/b/a Kendall Toyota, Appellee.
No. 3D02-3166.
District Court of Appeal of Florida, Third District.
September 9, 2004.
Rehearing Denied October 20, 2004.
*869 Norman Malinski, Aventura; Lauri Waldman Ross, Miami, for appellant.
Ruden, McClosky, Smith, Schuster Russell and John H. Pelzer, Fort Lauderdale, and Peter L. Wechsler, Miami, and Jacqueline F. Howe, Fort Lauderdale, and Peter J. Frommer and John P. Moore, Jr., Miami, for appellee.
Before COPE, GODERICH, and FLETCHER, JJ.
COPE, J.
This appeal presents the question of how to measure damages in a conversion case, where the property converted has great value to the owner, but little or no value to anyone else. We agree with the trial court that the evidence was legally insufficient to support the jury's verdict, but conclude that there must be a new trial.

I.
Christopher Advertising Group, Inc. ("Christopher Advertising" or "the agency") is an advertising agency which specializes in advertising for automobile dealerships. The agency was formed in New Jersey in the 1980s and later relocated to Florida.
In 1990, the agency was hired by Kendall Toyota, a large Toyota dealership located in Miami-Dade County.[1] The agency *870 soon was spending half its time on Kendall Toyota's work for which it received a monthly retainer of $19,800.
In addition to more conventional forms of advertising, the agency created a late night television show, the "Kendall Toyota Show," which eventually became the "Miami Tonight Show," which was very successful. The host and star of the show was Mark Jacobson, the general manager of Kendall Toyota. Kendall Toyota built its own television studio which it used for filming the show and for production of television commercials.
In 1994, the agency and Kendall Toyota agreed that the agency would move into Kendall Toyota's offices. The agency would continue to devote half its time to Kendall Toyota's advertising and half to other clients. The agency's owner, Paul Christopher, and the agency employees became employees of Kendall Toyota. There were no written agreements, so Paul Christopher and his employees had the status of employees at will.
In 1996, there was a business dispute between the parties. Mark Jacobson abruptly terminated the business relationship. He locked Paul Christopher and the agency employees out of the Kendall Toyota premises, which had a sophisticated security system. Viewing the facts in the light favorable to the jury verdict, Kendall Toyota refused to allow the agency to retrieve its computers, business equipment, and advertising materials that it used for its business.
Christopher testified that it took months for the agency to re-create its advertising materials so that it could resume business. Kendall Toyota continued to use plaintiff's computer for a year and a half. Kendall Toyota put the business records in storage. These consist of approximately fifty boxes of materials which were returned to Christopher in February of 1997.
The agency sued Kendall Toyota for conversion and civil theft.[2] The case proceeded to trial during which the jury was shown the materials which had been withheld. Paul Christopher explained how the withheld advertising materials served as the database on which the agency did business. He testified that in his opinion the advertising materials were worth $1 million. No expert valuation was presented.
The jury returned a verdict of $1 million on the conversion claim and, when trebled, a verdict of $3 million on the civil theft claim. On post-trial motions, the court set the verdict aside.
During trial, the court had kept the defense motions for directed verdict under advisement. After trial, the court granted those motions in part. The court agreed with Kendall Toyota that the $1 million verdict was not sufficiently supported by the evidence. The court reduced the conversion award to $57,777.40 which represented the value of tangible personal property (the computers and office equipment) which Kendall Toyota had withheld, plus a $7,500 commission which the agency lost because of the lockout.[3] The court also granted Kendall Toyota's motion for directed verdict on the civil theft claim, finding that the civil theft notice was insufficient.
The agency has appealed.

*871 II.

A.
The main issue in the present case is how to value property which has been the subject of conversion, where the property has great value to the owner but little or no value to anyone else.
As a general proposition, the owner of property which has been converted is entitled to fair value at the time and place of the conversion, with interest. See Restatement (Second) of Torts § 927 (1979). How to calculate fair value depends on the circumstances of the case. See id. §§ 911, 927.
"`[V]alue' includes market value and value to the owner. A person tortiously deprived of property is entitled to damages based upon its special value to him if that is greater than its market value." Id. § 927 cmt. c.
In many cases, the value of property will be what the Restatement refers to as the "exchange value" which "is the amount of money for which the subject matter could be exchanged or procured if there is a market continually resorted to by traders, or if no market exists, the amount that could be obtained in the usual course of finding a purchaser or hirer of similar property or services." Id. § 911(2).
For ordinary used goods, the measure of damages is the used value at the time of conversion, not the original cost or the replacement cost. See Lilly v. Bronson, 129 Fla. 675, 177 So. 218, 219 (1937) (measure of damages for used fishing boat and net was reasonable value at time of seizure).
The damage rules must be flexibly applied so as to provide fair compensation under the circumstances of the specific case. Writing in the context of valuing household articles, antiques, and heirlooms destroyed in a fire, the Florida Supreme Court said:
It is often impossible to place what is a current market value on such articles but the law does not contemplate that this be done with mathematical exactness. The law guarantees every person a remedy when he has been wronged. If the damage is to personal property as in this case, it may be impossible to show that all of it had a market value. In fact it may be very valuable so far as the owner is concerned but have no value so far as the public is concerned. It would be manifestly unfair to apply the test of market value in such cases.
When the wrong is shown it becomes the duty of court and jury to apply a test that will reasonably compensate the person wronged rather than one that makes it impossible to do so. The principle of res ipsa loquitur may be used to aid the result even though not technically applicable.
Florida Public Utilities Co. v. Wester, 150 Fla. 378, 7 So.2d 788, 790 (1942) (emphasis added).

B.
Special rules apply where the property converted has great value to the owner but little or no value to anyone else. The Restatement has addressed the issue as follows:

e. Peculiar value to the owner. The phrase "value to the owner" denotes the existence of factors apart from those entering into exchange value that cause the article to be more desirable to the owner than to others.
Some things may have no exchange value but may be valuable to the owner; other things may have a comparatively small exchange value but have a special and greater value to the owner. The absence or inadequacy of the *872 exchange value may result from the fact that others could not or would not use the thing for any purpose, or would employ it only in a less useful manner. Thus a personal record or manuscript, an artificial eye or a dog trained to obey only one master, will have substantially no value to others than the owner....
....
Even when the subject matter has its chief value in its value for use by the injured person, if the thing is replaceable, the damages for its loss are limited to replacement value, less an amount for depreciation.
Restatement (Second) of Torts § 911 cmt. e (emphasis added); see also W.E. Shipley, Annotation, Measure of Damages for Conversion or Loss of, or Damage to, Personal Property Having No Market Value, § 5, 12 A.L.R.2d 902 (1950); Emerson v. Empire Fire & Marine Ins. Co., 393 So.2d 691 (La.1981); Veeco Instruments, Inc. v. Candido, 70 Misc.2d 333, 334 N.Y.S.2d 321 (Sup.Ct.1972).
Although our reasoning differs from that of the trial court we agree with the court's decision to set aside the $1 million verdict. In this case the correct measure of damages would be the cost of re-creating the database. The $1 million figure testified to by Mr. Christopher did not represent the cost of re-creating the database, but instead represented his attempt to place a value on the database as an income-producing asset.[4]
Kendall Toyota acknowledges that the cost of re-creating the database is a correct measure of damages. Kendall Toyota argues, however, that the agency failed to bring out such evidence at trial, and therefore should not have a new trial. We reject that argument. At trial the agency attempted to ask witnesses about the cost of re-creating the database. This was excluded by the court because of an order in limine, obtained by Kendall Toyota, precluding evidence of consequential damages. The court interpreted the order to exclude evidence of the cost of re-creating the database, and precluded any such testimony. The point is sufficiently preserved and the agency is entitled to a new trial.
Kendall Toyota argues alternatively that since it eventually returned the database and equipment to the agency, it follows that the agency cannot recover anything for the cost of re-creating database. Kendall says that to do so would amount to a double recovery. According to Kendall Toyota, the agency is entitled at most to damages for loss of use of the database but not to damages for re-creating it. See Restatement (Second) of Torts § 927 cmt. o; see also id. § 922 & cmt. h.
That argument is unavailable to Kendall Toyota under the circumstances of this case. The database and equipment were withheld for so long that the agency had to re-create the database in order to continue tdo business. That is a compensable cost. See id. § 927(1), (2).

C.
When cost of replacement is the appropriate measure of damages, there should be a deduction for depreciation if *873 applicable under the circumstances of the case.
As quoted above, the Restatement indicates that "[e]ven when the subject matter has its chief value in its value for use by the injured person, if the thing is replaceable, the damages for its loss are limited to replacement value, less an amount for depreciation." Restatement (Second) of Torts § 911 cmt. e (citing id. § 928).
In the present case the property being re-created is an advertising database, which is intellectual property. It does not appear that a depreciation analysis would be applicable here, but if it is, the parties may address that issue on remand.

III.
The agency argues that the trial court erred by excluding evidence of consequential damages. The agency sought to show that upon being locked out and deprived of its database, it was temporarily out of business and lost profits until it was able to reconstruct the database. The trial court granted Kendall Toyota's motion in limine on this issue, and excluded proof of consequential damages, including lost profits. The agency had retained an expert who had performed a lost profits calculation, but as a result of the court's ruling, the expert was unable to testify.
Under the Restatement, in addition to the value of the item converted, damages also may include "the amount of any further pecuniary loss of which the deprivation has been a legal cause ... and... compensation for the loss of use not otherwise compensated." Restatement (Second) of Torts § 927(2)(b), (d). In a proper case lost profits may be recovered. Id. § 927 cmt. m. The plaintiff must demonstrate with sufficient certainty the extent of the loss and that the conversion was the legal cause thereof. See id. § 927 cmt. m (citing id. §§ 912, 917).
Pertinent here, "[a]nother type of case is that in which the plaintiff is unable promptly to find a replacement for the chattel on the market and is deprived of use during the period of delay. The loss of that use is not made good by a subsequent purchase and it is therefore compensable." Id. § 927 cmt. o.
Assume a hypothetical case in which the defendant wrongfully converts custom-made manufacturing equipment from plaintiff's manufacturing plant. The result is that the manufacturing plant must close down for a month until a new piece of manufacturing equipment can be made and installed. In that situation, compensating the plaintiff for the value of the converted custom-made equipment covers only a part of the loss. Under the Restatement rule, lost profits would be recoverable provided they are proven with sufficient certainty.
In the present case, the database was the basis on which the advertising agency did its business. After the lockout, the advertising agency could not do business until such time as it had re-created the database. The agency should have been allowed to offer evidence of its lost profits.
Kendall Toyota argues that In re Corbin's Estate, 391 So.2d 731 (Fla. 3d DCA 1980), precludes lost profits and other special damages in conversion cases. While that was the ruling under the circumstance of that particular case, Corbin's Estate does not announce such a categorical rule.
In Corbin's Estate, the decedent had operated a business. His wife was the personal representative. The personal representative wrongfully kept the business for herself instead of treating it as a probate asset. She operated the business for a period of time, sold it to a third party, and reacquired it when the buyer *874 defaulted. She then sold the business again.
The decedent's daughter obtained a surcharge judgment against the personal representative for conversion.[5] On appeal, the daughter maintained that the estate was entitled to receive not only the fair value of the business, but also the profits, depreciation benefits, and compensation the personal representative had received prior to the time that she sold the business.
On those facts, this court said:
The proper measure of damages for conversion in Florida is the ... reasonable market value, measured as of the time and place of conversion.
Although argument might well be made that lost profits and other special damages should be awarded in conversion cases, see Dobbs, Remedies, 408-11 (1973), we perceive such special damages to be reflected in an appropriate award of interest upon the general damage verdict.
Id. at 733 (emphasis added).
Under the circumstances of that case, the stated rule provided fair compensation and eliminated double recovery. The business was valued as a profit-making entity. The court concluded that the estate would be fully compensated by receiving the fair value of the business as of the date of the conversion, plus interest.[6] Under the facts presented, Corbin's Estate results in proper compensation.
Unlike Corbin's Estate, the present case involves an additional loss not otherwise compensated: the conversion of the agency's database, which forced the agency temporarily out of business until such time as the database could be re-created. Corbin's Estate did not involve any such issue.
Kendall Toyota reads Gillette v. Stapleton, 336 So.2d 1226 (Fla. 2d DCA 1976) to say that consequential damages are not recoverable in a conversion case, but that is not so. In Gillette, the defendant agreed to repair the plaintiff's damaged automobile. He did not repair it and refused to return it to the plaintiff when demanded a year later. The car had been left in the open and exposure to the elements reduced its value to between fifty dollars and one hundred dollars. The jury was instructed that if the defendant had converted the vehicle, then the plaintiff would be entitled to the "reasonable value of a comparable replacement unit." Id. at 1227. There was also testimony that the average rental cost for a similar automobile was fourteen dollars per day. The court concluded that the $8,808 verdict was based largely on rental cost.
Reversing for a new trial, the Second District explained that damages for conversion are based on the "reasonable value of the property when converted and are not to be based on the replacement value." Id. at 1227. The relevant date for valuation would be the date the plaintiff demanded return of car, not the date that the car was initially delivered to the repair shop. The Gillette case does not discuss *875 any issue regarding consequential damages, nor did the case involve any claim that the property converted was equipment used by plaintiff for his livelihood.
Kendall Toyota also relies on Florida Farm Bureau Casualty Insurance Co. v. Patterson, 611 So.2d 558 (Fla. 1st DCA 1992). In that case the plaintiff was in an auto accident and his car was a total loss. Prior to reaching a settlement with his insurance company, the insurer without his permission took the car and sold it for scrap. The insurer eventually paid the plaintiff the fair market value of the car less a $250 deductible.
The plaintiff brought a conversion action against the insurer in which the insurer conceded that the plaintiff was entitled to the salvage value of the auto and the return of his insurance deductible. Id. at 559. The First District ruled that the plaintiff "is not entitled to recover in a conversion action for the loss of use of his auto or the loss of use of the money that he continued to pay on his auto loan." Id. at 560. The ruling is correct, for the car was a total loss as a result of the accident and the plaintiff had been made whole through payment of the salvage value. The case did not involve conversion of equipment with which the plaintiff earned his livelihood.
We conclude that the Restatement fairly states Florida law. On remand Christopher Advertising will be allowed to assert a claim for lost profits, but with the proviso that they must be shown with certainty and causation must be demonstrated.[7]

IV.
After trial the court granted Kendall Toyota a directed verdict on the civil theft claim.[8] The court ruled that the agency had filed its civil theft claim prematurely, in violation of the applicable statute. We reverse on this point, as the passage of time cured the problem, and Kendall Toyota did not suffer any harm from the premature filing.
Under the civil theft statute, "Before filing an action for damages under this section, the person claiming injury must make a written demand for ... the treble damage amount...." § 772.11, Fla. Stat. (1995). If the recipient of the demand complies with it within thirty days after receiving the demand, then the recipient is released from further civil liability. Id.
In this case, counsel for the agency sent a written demand letter to Kendall Toyota on December 13, 1996. The letter demanded payment of a treble damage sum of $3,069,000 under section 772.11, Florida Statutes. The letter was sent certified mail, return receipt requested.
Under the statute, the agency should have waited thirty days from the date the letter was delivered to Kendall Toyota before filing suit. Instead, the agency filed its lawsuit the same dayDecember 13, 1996. The agency attached the demand letter as an exhibit to its complaint. Kendall Toyota moved to dismiss, arguing that the civil theft count had been filed prematurely. By the time of the hearing (heard by a predecessor judge), the thirty-day waiting period had expired. The predecessor judge denied the motion to dismiss, presumably on the theory that the prematurity had been cured by the passage of time. Kendall Toyota subsequently included the issue as one of its affirmative defenses, and raised the issue by motion for directed verdict at trial which, as already *876 stated, the successor judge eventually granted.
We find ourselves in agreement with the predecessor judge on this issue. The agency jumped the gun by filing the civil theft count without waiting the required thirty-day period. However, the waiting period was to allow Kendall Toyota a thirty-day interval in which to comply with the agency's demand for $3,069,000. Kendall Toyota never paid the treble damage amount and had no intention of doing so. There has been no showing that Kendall Toyota was prejudiced by the premature filing. Had the predecessor judge granted the motion to dismiss, the agency would have been entitled to re-plead immediately because the thirty days had expired. Dismissal in this situation appears to be needless wheel-spinning. We conclude that the directed verdict should not have been granted.
The cases relied on by Kendall Toyota are factually different from the present one. In one of the cases, the record was clear that the plaintiff never sent any written demand at all. See Korman v. Iglesias, 736 F.Supp. 261, 267 (S.D.Fla.1990). In the other cases, the pleadings or summary judgment record failed to establish one way or the other whether the required written demand had ever been sent. See Nerbonne, N.V. v. Lake Bryan Int'l Properties, 689 So.2d 322, 326 (Fla. 5th DCA 1997) (counterclaim); Seymour v. Adams, 638 So.2d 1044, 1048 (Fla. 5th DCA 1994) (summary judgment).
The trial court also granted the motion for directed verdict on the ground that the proof of damages was insufficient, for the same reasons that the court granted the directed verdict related to the conversion count. Consistent with our disposition of the conversion count, we reverse the directed verdict and remand for a new trial on damages for civil theft as well.
Kendall Toyota also argues that the proof of the substantive elements of civil theft was legally insufficient. The trial court did not grant a directed verdict on that ground and we agree with the trial court that a jury question was presented.

V.
For the stated reasons, we reverse the final judgment and remand for a new trial on damages for conversion and civil theft.
Reversed and remanded for further proceedings consistent herewith.
NOTES
[1] The corporate entity is R & B Holding Company, Inc. which does business as Kendall Toyota.
[2] The agency also sued for $58,103.38 on open account for unpaid bills. The jury award of that amount is not an issue on this appeal.
[3] The agency had prepared advertising for the Maxon Group which was ready to be transmitted but was never sent because the agency was locked out of the premises.
[4] The trial court took the view, with which we also agree, that while Mr. Christopher was qualified to express an opinion on value (since he was the owner of the business), the opinion nonetheless had to be based on some objective measurable standard. In this case Mr. Christopher's $1 million figure was entirely speculative and subjective. See Trailer Ranch, Inc. v. Levine, 523 So.2d 629, 632 (Fla. 4th DCA 1988); Salvage & Surplus, Inc. v. Weintraub, 131 So.2d 515, 516 (Fla. 3d DCA 1961).
[5] The daughter also recovered for breach of fiduciary duty. This court ruled that there could be a recovery for conversion, or breach of fiduciary duty, but not both, in the circumstances of that case. Id. at 732.
[6] The date of the conversion would be the date at which the personal representative began operating the business for her own benefit, not the later sale date. The claim for profits and depreciation taken by the personal representative necessarily would be items taken by the personal representative after the date of the conversion. The same logic would apply to compensation taken by the personal representative after the date of the conversion.
[7] In view of this ruling we need not reach the agency's alternative argument regarding amendment of the pleadings.
[8] The court had reserved ruling on this motion for directed verdict during trial.