# Third District Court of Appeal
## State of Florida

Opinion filed October 6, 2021.
Not final until disposition of timely filed motion for rehearing.

————————————

No. 3D20-0670
Lower Tribunal No. 16-6231

————————————

**Yair Barak,**
Appellant,

vs.

**ACS International Projects, Ltd., etc.,**
Appellee.

An appeal from the Circuit Court for Miami-Dade County, Veronica Diaz, Judge.

Yair Barak, in proper person.

The Bobadilla Law Firm, and D. Fernando Bobadilla, for appellee.

Before LINDSEY, MILLER, and LOBREE, JJ.

MILLER, J.

Appellant, Yair Barak, challenges a final judgment rendered in favor of appellee, ACS International Projects, Ltd., an Israeli corporation ("ACS Israel"). The primary issue on appeal is whether Article 4A of the Uniform Commercial Code, as adopted and codified in chapter 670, Florida Statutes (2021), preempts ACS Israel's civil theft and conversion claims. Concluding the claims are not preempted, we affirm as to all issues, save the calculation of damages and prejudgment interest.[1]

---

[1] Barak raises a myriad of other issues on appeal, none of which warrant reversal. See Christopher Advert. Grp., Inc. v. R & B Holding Co., Inc., 883 So. 2d 867, 875 (Fla. 3d DCA 2004) (finding no prejudice in the premature filing of an amended complaint where the defendant did not tender the purloined funds within thirty days of receipt of the civil theft letter); Hebert v. State, 25 So. 3d 612, 614 (Fla. 1st DCA 2009) (holding that evidence of specific intent to commit theft may be demonstrated "by circumstantial evidence found in the surrounding circumstances of the event"); 12 Fla. Jur. 2d Conversion and Replevin § 7 (2021) ("To be a proper subject of conversion, each coin or bill need not be earmarked, but there must be an obligation to keep intact or deliver specific money in question so that such money can be identified. Money is capable of identification where it is delivered at one time, by one act and in one mass, or where the deposit is special, and the identical money is to be kept for the party making the deposit, or where wrongful possession of such property is obtained.") (footnotes omitted); Edwards v. Landsman, 51 So. 3d 1208, 1214 (Fla. 4th DCA 2011) (quoting P.V. Constr. Corp. v. Kovner, 538 So. 2d 502, 504 (Fla. 4th DCA 1989)) ("Under Florida law, 'an officer of a corporation who commits or participates in a tort, whether or not it is in furtherance of corporate business and whether or not it is by authority of the corporation, is liable to the injured party whether or not the corporation is also liable.'"); Kendall Healthcare Grp., Ltd. v. Madrigal, 271 So. 3d 1120, 1123 (Fla. 3d DCA 2019) (holding "although the trial judge adopted verbatim the [plaintiffs]' proposed order, the record before this Court reflects that the trial judge did not delegate its independent judgment").

## BACKGROUND

Because Barak asserted his Fifth Amendment privilege against self-incrimination in this litigation, the relevant facts of record are undisputed. After performing certain contractually obligated services, ACS Israel invoiced the Venezuelan state-owned petroleum company, Petroleo de Venezuela, S.A. ("PDVSA"), seeking payment by way of an electronic funds transfer. To allay concerns regarding possible wire fraud, the parties entered into a risk of loss agreement providing that any damages incurred after the wire was originated would be borne by ACS Israel.

Barak, a former business partner of ACS Israel, created a Florida limited liability company denominated as "ACS International Projects, Ltd." ("ACS Florida") and opened a Mercantil Commercebank, N.A. account under the same name. Unbeknownst to ACS Israel, he furtively persuaded PDVSA to order payment be made to ACS Florida.

PDVSA initiated two separate wire transfer payment orders, totaling $1,566,921.60, through its bank, Banco Espirito Santo. Mercantil accepted both wires and subsequently deposited the funds into ACS Florida's account. The funds were then transferred to several entities owned by Barak.

After learning of the apparent fraud, ACS Israel obtained a temporary injunction in the circuit court, freezing ACS Florida's account, and filed suit

3

against Barak alleging fraud, conversion, civil theft, and conspiracy and seeking the imposition of a constructive trust and damages. It subsequently served Barak with a civil theft letter, demanding the return of $1,566,921.60 within thirty days.

A successful banking recall with the Society for Worldwide Interbank Financial Transactions ("SWIFT") yielded $1,364,666.40 in recovered funds within the thirty-day demand period. Some months later, ACS Israel recouped an additional $182,546.35 by way of a second SWIFT recall.

After the pleadings closed, the parties filed competing summary judgment motions. Concluding the grand theft and conversion claims were not preempted by the remedies codified in Article 4A of the Uniform Commercial Code, the trial court granted summary judgment in favor of ACS Israel. Thereafter, the court rendered final judgment, awarding damages in the amount demanded in the civil theft notice and prejudgment interest on the trebled damages. The instant appeal ensued.

## STANDARD OF REVIEW

As the operation of preemption constitutes a pure issue of law, "we apply a de novo standard of review." See Marcy v. DaimlerChrysler Corp., 921 So. 2d 781, 783 (Fla. 5th DCA 2006).

## LEGAL ANALYSIS

The resolution of this appeal requires an analysis as to the reach of Article 4A of the Uniform Commercial Code, as adopted in chapter 670, Florida Statutes. Rapid developments in financial technology have enabled commercial consumers to expeditiously exchange value through electronic means. While such transactions "have become ubiquitous," forming an "integral element of the banking experience for many [commercial] consumers," they carry "inevitable risks." Stephanie L. Tang, Increasing the Role of Agency Deference in Curbing Online Banking Fraud, 91 N.D. L. Rev. 329, 330–31 (2015). In particular, the increased use of automated clearinghouse ("ACH") services and wire transfers has precipitated surges in banking fraud. Robert W. Ludwig, Jr., Salvatore Scanio, & Joseph S. Szary, Malware and Fraudulent Electronic Funds Transfers, Who Bears the Loss, Fidelity L. J. 101, 103 (Oct. 2010).

Article 4A of the Uniform Commercial Code was developed to address disputes arising out of misdirected or unauthorized electronic funds transfers and payment orders. Prior to its enactment, "there was no comprehensive body of law—statutory or judicial—that defined the judicial nature of a [commercial] funds transfer or the rights and obligations flowing from payment orders." U.C.C. § 4A-102 cmt. The drafters endeavored to deliver clarity to this area of the law by establishing "uniform and predictable rights,

duties, and liabilities for arm's-length funds transfers between various commercial parties and their banks." Michael G. Tanner & JoAnne Eichelberger, Bank Customers Beware: Recovery of Unauthorized Electronic Funds Transfers Isn't So Easy, 91 Fla. B. J. 36, 36 (Apr. 2017).

In crafting the provisions of Article 4A, the drafters made "[a] deliberate decision . . . to use precise and detailed rules to assign responsibility, define behavioral norms, allocate risks and establish limits on liability, rather than to rely on broadly stated, flexible principles." U.C.C. §4A-102, cmt. Further, "a critical consideration was that the various parties to funds transfers need to be able to predict risk with certainty, to insure against risk, to adjust operational and security procedures, and to price funds transfer services appropriately." Id.

Although indubitably expansive, Article 4A is not exhaustive. The drafters "intended that Article 4A would be supplemented, enhanced, and in some places, superceded by other bodies of law . . . the [A]rticle is intended to synergize with other legal doctrines." Regions Bank v. Provident Bank, Inc., 345 F.3d 1267, 1275 (11th Cir. 2003) (alterations in original) (quoting Thomas C. Baxter & Raj Bhala, The Interrelationship of Article 4A with Other Law, 45 Bus. Law. 1485, 1485 (1990)). This is consistent with the proposition that "[u]nless displaced by the particular provisions of [the

6

Uniform Commercial Code], the principles of law and equity . . . shall supplement its provisions."  § 671.103 Fla. Stat.  Hence, other sources of law may supplement, but not supplant the provisions of the UCC, and where the provisions of the Code "do not venture, the claimant need not turn back; he or she may seek other guides, statutory or judicial."  Sheerbonnet, Ltd. v. Am. Exp. Bank, Ltd., 951 F. Supp. 403, 408 (S.D.N.Y. 1995); see also 15A Am. Jur. 2d Commercial Code § 18 (2021).

Under Article 4A, a bank receiving a payment order ordinarily bears the risk of any misdirected funds transfer.  U.C.C. § 4A-202(a)–(b).  That risk may be shifted to the customer under two defined circumstances.  The first is where the customer is deemed to have authorized the transfer, and the second is where the parties stipulated to the use of a commercially reasonable security procedure.  Id.

Article 4A only purports, however, to allocate liability as between "parties" to the funds transfer, a term narrowly defined as including only the originator, sender, beneficiary, and enabling financial institutions.  U.C.C. §§ 4A-103–104; §§ 670.103–.104, Fla. Stat.  The text is wholly silent as to the rights and remedies of all others.

In the instant case, ACS Israel and Barak were not parties to either of the underlying transactions.  Further, both wire transfers were clearly

7

authorized. Liability was not therefore predicated upon the mechanics of the transfers, but rather upon tortious conduct initiated by Barak after the transfers were completed. Hence, Article 4A affords no remedy. See § 670.209, Fla. Stat.

Under these circumstances, barring the asserted claims would yield the absurd result of divesting ACS Israel of any avenue of redress and shielding Barak from liability. As "[i]t could hardly have been the intent of the drafters [of Article 4A] to enable a party to succeed in engaging in fraudulent activity," such a result would contravene legislative intent. Simple Helix, LLC v. Relus Techs., LLC, 493 F. Supp. 3d 1087, 1107 (N.D. Ala. 2020) (quoting Regions, 345 F.3d at 1276). Consequently, concluding this "is not a situation covered by any of the particular provisions of [Article 4A]," we find the trial court did not err in eschewing preemption. Schlegel v. Bank of Am., N.A., 628 S.E.2d 362, 368 (Va. 2006); see also Sheerbonnet, 951 F. Supp. at 409; Koss Corp. v. Am. Exp. Co., 309 P.3d 898, 904 (Ariz. Ct. App. 2013).

Barak further contends that ACS Israel, as the guarantor under the risk of loss agreement and mere intended beneficiary of the misappropriated funds, was barred from maintaining suit by operation of section 670.402(6), Florida Statutes. See § 670.402(6), Fla. Stat. ("The right of the sender of a payment order to be excused from the obligation to pay the order as stated

8

in subsection (3) or to receive refund under subsection (4) may not be varied by agreement.").  Under the facts presented, PDVSA was not excused from its obligation and there was no right to a refund.  Thus, heeding the fundamental tenet of freedom of contract that parties are endowed with the right to agree to terms governing their private affairs so long as the terms do not violate law or public policy, we reject this argument.  Franks v. Bowers, 116 So. 3d 1240, 1247 (Fla. 2013).

Upon ACS Israel's partial confession of error and our independent review of the record, however, we are constrained to reverse the computation of damages and prejudgment interest.  On remand, the trial court shall award threefold "the actual damages sustained."[2]  See § 772.11(1), Fla. Stat.; Standard Jury Instructions–Civil Cases (No. 98-3), 720 So. 2d 1077 (Fla. 1998); see also Ocala Jockey Club, LLC v. Rogers, 981 So. 2d 1245, 1247 (Fla. 5th DCA 2008); Haddad v. Cura, 674 So. 2d 168,

---

[2] The civil theft statute is remedial in nature, and the term "actual damages," in the absence of any statutory definition, is used synonymously with "compensatory damages."  See § 812.037, Fla. Stat. ("Notwithstanding s. 775.021, ss. 812.012–812.037 shall not be construed strictly or liberally, but shall be construed in light of their purposes to achieve their remedial goals."); Snyder v. Bell, 746 So. 2d 1096, 1098 (Fla. 2d DCA 1999) ("Florida's civil theft statute is without question remedial, rather than punitive, in nature."); see also, Ross v. Gore, 48 So. 2d 412, 414 (Fla. 1950) ("Since it is used synonymously with 'compensatory damages' in many of our decided cases, we think it is fair to assume that 'actual damages' mean 'compensatory damages.'").

169 (Fla. 3d DCA 1996); <u>Barbe v. Villeneuve</u>, 505 So. 2d 1331, 1333 (Fla. 1987); <u>Villeneuve v. Atlas Yacht Sales, Inc.</u>, 483 So. 2d 67, 69 (Fla. 4th DCA 1986); <u>Sebastiano v. Sclafani</u>, 984 So. 2d 673, 673 (Fla. 4th DCA 2008); <u>Vining v. Martyn</u>, 660 So. 2d 1081, 1082 (Fla. 4th DCA 1995). Any funds derived from collateral sources shall be offset against the trebled actual damages, and prejudgment interest shall be calculated from the date of each respective loss and awarded only on actual damages. <u>See</u> <u>AVP Destiny, LLC v. FD Destiny, LLC</u>, 267 So. 3d 1048, 1050 (Fla. 4th DCA 2019); <u>Greenburg v. Grossman</u>, 683 So. 2d 156, 157 (Fla. 3d DCA 1996).

Affirmed in part; reversed in part; and remanded.